# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:20-CV-1021 RLW |
| ) | |
| AMERICAN SCREENING, LLC, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Federal Trade Commission's ("FTC") Motion for Summary Judgment. (ECF No. 39). Defendants oppose the motion (ECF No. 52) and it is fully briefed. For the reasons below, the Court will grant the motion in part.

Defendant American Screening, LLC ("American Screening") is a Louisiana Limited Liability Company with its principal place of business in Shreveport, Louisiana. (ECF No. 50, ¶¶ 1-2). Defendant Ron Kilgarlin is the founder, Chief Executive Officer, and President of American Screening. (ECF No. 50, ¶ 4). Defendant Shawn Kilgarlin is the Quality and International Organization of Standardization ("ISO") Manager for the company. (ECF No. 50, ¶ 5). Ron and Shawn are married. (ECF No. 50, ¶ 7).

## FACTS[1]

American Screening markets and sells medical supplies, including personal protective equipment. ("PPE"). (ECF No. 50, ¶ 9). At all relevant times herein, the company utilized a third-party fulfillment warehouse in St. Louis, Missouri. (ECF No. 50, ¶ 223). On certain occasions, customers were able to pick up orders from American Screening's Shreveport location. (ECF No. 50, ¶ 252). Most of the company's sales occur online. (ECF No. 50, ¶ 23).

At the start of the COVID-19 pandemic, American Screening's website stated: "All shipping occurs 24-48 hours after processing, pending product availability." (ECF No. 50, ¶ 72). The company's representatives reiterated this timeframe directly to some customers. (ECF No. 50, ¶ 76). In March 2020, American Screening updated its website to reflect that "[p]roducts may ship 7-10 business days after [an] order has been placed." (ECF No. 50, ¶ 84). The company also offered overnight shipping. (ECF No. 50, ¶ 88).

During at least the early part of the pandemic,[2] American Screening represented to consumers that it had PPE products "in stock" and "available to ship." (ECF No. 50, ¶ 122; ECF No. 53, pp. 9-10). For several months in 2020, the company did not have enough PPE on hand to

---

[1] These facts are based on FTC's Statement of Uncontroverted Material Facts (ECF No. 50) and Defendants' Response to FTC's Statement of Material Facts. (ECF No. 53). Defendants also submitted a Supplemental Statement of Facts. (ECF No. 53, p. 27). Local Rule 4.01(E) states that "[e]very memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts[.]" The Rule does not contemplate a separate statement of facts by the opposing party. Even if Defendants filed their Supplemental Statement of Facts as a further response to FTC's Statement, it is improper for two reasons: (1) It does not note the paragraph number to which it responds, as required by Rule 4.01; and (2) It contains numerous irrelevant facts pertaining to the progression of the COVID-19 pandemic. The Court will not consider Defendants' Supplemental Statement of Facts. *See Thompson v. Normandy Sch. Collaborative*, No. 4:19-CV-03220-MTS, 2021 WL 3286810, at *1 (E.D. Mo. Aug. 2, 2021).

[2] It is difficult to discern exact dates from the parties' filings.

satisfy demand. (ECF No. 50, ¶¶ 128-137, 146, 147; ECF No. 53, p. 11).[3] American Screening itself acknowledged the shortage of PPE in various customer communications. (ECF No. 50, ¶¶ 99, 107, 139, 140, 164; ECF No. 53, pp. 12-13).

The company's inventory issues resulted in many backorders—orders the company could not immediately fulfill. (ECF No. 50, ¶¶ 165-171; ECF No. 50-22; ECF No. 50-23).[4] During the first months of the pandemic, American Screening did not inform all impacted customers that their orders would be delayed. (ECF No. 50, ¶ 180). From March to November 2020, American Screening did not know how much inventory it had and did not update all customers on the status of their orders. (ECF No. 50, ¶¶ 188-89).

For at least some time during pandemic, online customers were able to order—and many did order—products that were labeled "in stock" that were not actually available. (ECF No. 50, ¶¶ 192-200).[5] American Screening charged customers as soon as they hit "submit." (ECF No. 50, ¶¶ 62-63). In these situations, American Screening could not ship products within seven to 10 business days. (ECF No. 50, ¶ 207). Ms. Bridget Lamette, the company's Customer Service Manager, stated during her deposition that American Screening had no way to ensure backorders

---

[3] Defendants attempt to dispute this and many other facts with deposition testimony from LeeAnn Evans, Ms. Kilgarlin's assistant. (ECF No. 53, p. 11). When asked whether American Screening had inventory of PPE between approximately March 2020 and October 2020, Ms. Evans stated: "I'm sure we did. I just don't know how much. I wasn't involved in that." (ECF No. 50-13, p. 47). But when asked if American Screening had enough inventory to satisfy demand, Ms. Evan's unequivocally stated: "No." *Id.* This testimony does not controvert FTC's contention that American Screening lacked sufficient inventory. It does the opposite.
[4] Defendants dispute the precise number of backorders but do not dispute the existence of backorders. (ECF No. 53, p. 14). FTC's analysis shows tens of thousands of backorders. (ECF No. 50, ¶¶ 176-178). Defendants argue that FTC's analysis is inaccurate. (ECF No. 53, p. 14). The precise number of backorders is not essential to this analysis. It is undeniable that many customers' orders were backordered.
[5] Defendants dispute the pervasiveness of this problem but do not meaningfully dispute the fact that at some point their website advertised products as "in stock" that were not in fact in stock. (ECF No. 53, p. 16).

3

went out on time. (ECF No. 50, ¶ 208). She also testified that it was taking "about six weeks before stuff shipped out" and that there were times when American Screening did not ship products for over 30 days. (ECF No. 50-14, pp. 93-94). Ms. Kilgarlin's assistant, Ms. LeeAnn Evans, corroborated Ms. Lamette's testimony about shipping times. (ECF No. 50-13, p. 106).

American Screening also performed "SKU swaps" whereby it filled many orders with brands different from those ordered by customers. (ECF No. 50, ¶ 235). In fact, for a time, the company's website displayed brands of PPE that were no longer in stock. (ECF No. 50, ¶ 239). At his Rule 30(b)(6) deposition, Mr. William Herriage, American Screening's Controller, testified that "many thousands" of orders were swapped without the customer's knowledge or consent. (ECF No. 50-8, p. 115).

In response to shipping delays in early 2020, American Screening did not call all affected customers to determine whether they consented to shipping delays in lieu of a refund. (ECF No. 50, ¶¶ 259-270).[6] At her deposition, Ms. Evans admitted that American Screening denied refunds to customers who requested them for delayed shipments. (ECF No. 50, ¶ 292). Evans also testified that if a customer requested a refund based on a shipping delay, the company did not process the refund but instead shipped the products. (ECF No. 50, ¶ 295).

American Screening did not automatically cancel orders without a prior demand from the customer. (ECF No. 50, ¶ 310). On March 31, 2020, Mr. Kilgarlin sent an email to the company's

---

[6] Defendants do not meaningfully dispute this fact. While they claim that "[o]ne hundred percent of customers on American Screening's open orders list were eventually contacted," (ECF No. 53, p. 18), they do not state that the "open orders list" included all affected customers or that all these customers were given the option to choose between a delay or a refund. Their cited deposition testimony also fails to controvert this fact. For example, when asked whether American Screening asked customers if they would like a refund when their order was delayed, Mr. Herriage stated: "In some cases, yes." (ECF No. 50-8, p. 117). When asked if American Screening always called consumers to determine if they wanted to wait or get a different product, Mr. Herriage: "'Always' would mean a hundred percent, so I would say no." *Id.*

4

employees stating, "especially we don't wont [sic] cancelled orders." (ECF No. 50, ¶ 312). From March through December 2020, many customers pursued chargebacks through their credit card companies after not receiving their orders. (ECF No. 50, ¶¶ 317-323). Ms. Lamette testified that the number of chargebacks was "so extreme" that it became her "primary focus." (ECF No. 50, ¶ 322).

Throughout 2020, American Screening received thousands of complaints related to shipping delays or refunds. (ECF No. 50, ¶ 329). The company received over 500 complaints per day throughout 2020. (ECF No. 50, ¶¶ 332-335). The complaints related to delayed shipments, incorrect shipments, and failure to give refunds. (ECF No. 50, ¶¶335-341). American Screening did not respond to all complaints. (ECF No. 50, ¶ 355).[7]

## LEGAL STANDARD

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). The substantive law determines which facts are critical and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id*. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*.

---

[7] Here again, Defendants argue that American Screening contacted "[o]ne hundred percent of customers" on its "open orders list." (ECF No. 53, p. 18). But Defendants do not contend that the "open orders list" reflected all complaints.

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. "The nonmoving party may not rely on allegations or denials" but rather "must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor on more than mere speculation or conjecture." *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017)).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. *Celotex Corp.*, 477 U.S. at 331. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000)).

## DISCUSSION

### I.   Defendant American Screening Violated the Merchandise Rule.

#### A.   *The Merchandise Rule*

The Merchandise Rule requires all mail-, internet-, and phone-based sellers to have a reasonable basis to believe that orders will ship either "within [the] time clearly and conspicuously stated in [a] solicitation; or . . . if no time is clearly and conspicuously stated, within thirty (30) days after receipt of a properly completed order from a buyer." 16 C.F.R. § 435.2(a)(1). If a seller

6

cannot comply with these shipping requirements, the seller must clearly and conspicuously, and without prior demand, give the buyer the option to either consent to the delay or cancel and receive a prompt refund. 16 C.F.R. § 435.2(b)(1). If a seller fails to provide this option and has not shipped the merchandise in accordance with § 425.2(a)(1), it must deem an order canceled and provide a prompt refund to the buyer. 16 C.F.R. § 435.2(c)(5).

A seller's failure to maintain "records or other documentary proof establishing its use of systems and procedures which assure the shipment of merchandise" in accordance with paragraph (a) creates a "rebuttable presumption that the seller lacked a reasonable basis for any expectation of shipment within said applicable time." 16 C.F.R. § 435.2(a)(4). Similarly, a seller's failure to maintain records relating to the requirements of paragraphs (b) and (c) creates a rebuttable presumption that the seller failed to comply with those requirements. 16 C.F.R. § 435.2(d).

### B.  *Discussion*

FTC alleges that Defendants violated the Merchandise Rule by: (1) failing to have a reasonable basis for their advertised shipping claims in violation of 16 C.F.R. 435.2(a)(1); (2) failing to offer consumers, without prior demand, the option to either consent to the delay or cancel and receive a prompt refund in violation of 16 C.F.R. § 435.2(b)(1); and (3) failing to deem orders canceled and provide prompt refunds in violation of 16 C.F.R. § 435.2(c)(5). (ECF No. 39, pp. 8-9). Defendants counter that they had a reasonable basis for shipping estimates and "acted reasonably and in the spirit of [the Merchandise Rule] in resolving delay issues[.]" (ECF No. 52, pp. 8, 19). The Court finds as a matter of law that Defendant American Screening violated the Merchandise Rule.[8]

---

[8] FTC also asserts that Kilgarlin Defendants are individually liable for these violations. The Court will address that issue below.

7

1. <u>American Screening did not have a reasonable basis for its shipping claims.</u>

American Screening did not have a reasonable basis for its shipping claims as required by 16 C.F.R. 435.2(a)(1). The record shows that American Screening struggled to source PPE throughout the pandemic. (ECF No. 50, ¶¶ 128-137, 148, 150-159, 163). Indeed, for many months, the company did not know how much PPE it had in stock. (ECF No. 50, ¶¶ 188-89). American Screening nevertheless permitted customers to order items that were not in stock. (ECF No. 50, ¶¶ 192-200).[9] For at least part of the pandemic, the company's website stated that orders would ship within seven to 10 business days. (ECF No. 50, ¶ 84). But when customers ordered out-of-stock PPE, the company did not ship those orders within the advertised timeframe. (ECF No. 50, ¶ 207). In fact, the company failed to ship many orders within 30 days. (ECF No. 50-14, pp. 93-94; ECF No. 50-13, p. 106). Most orders took "about six weeks" to ship during the early part of the pandemic. (ECF No. 50-14, pp. 93-94).[10] In light of these facts, the company had no reasonable basis to claim that products would ship within 30 days, let alone 10. The Court holds that American Screening violated 16 C.F.R. 435.2(a)(1).

2. <u>American Screening did not give the "refund-or-consent" option to all necessary customers.</u>

American Screening did not contact all affected customers to provide the refund-or-consent option mandated by 16 C.F.R. § 435.2(b)(1). (ECF No. 50, ¶¶ 259-270). Ms. Evans testified at her

---

[9] Defendants assert that they updated the company's website throughout the pandemic to better reflect product availability. Defendants do not, however, explicitly refute FTC's contention that customers were able to order items that were not in stock. (ECF No. 53, pp. 4, 6, 8-11, 15).

[10] Defendants argue that FTC is not justified in relying on the "24-48-hour fine print" contained in American Screening's shipping policy. (ECF No. 52, pp. 10-13). To the extent the Court considers FTC's argument in this regard, Defendants ask the Court to note that the shipping policy included the phrase "pending availability." *Id.* The Court is not convinced that the "24-48 hour" language is fine print. But as explained here, the record shows that American Screening failed to comply with its later seven-to-10-day shipping policy, which was undoubtedly clear and conspicuous. In addition, Defendants purported to offer products that were not in stock. (ECF No. 50, ¶¶ 192-200).

deposition that if a customer requested a refund after a shipping delay, American Screening did not process the refund request but instead shipped the products. (ECF No. 50, ¶ 295). While Defendants try to counter these facts, their own citations to the record reinforce the Court's conclusion. For example, Defendants suggest that Mr. Kilgarlin's deposition testimony shows that all relevant customers received the refund-or-consent option. (ECF No. 53, pp. 18). But when asked during his deposition whether American Screening offered refunds to customers who had not asked for them, Mr. Kilgarlin responded: "*I think at some point*, yes, once we understood more clearly what to do[.]" (ECF No. 50-10, p. 97) (emphasis added). Defendants also cite Ms. Lamette's deposition testimony to suggest American Screening complied with the refund-or-consent requirement. But when asked whether representatives were able to contact every single person who had their order swapped, Ms. Lamette stated: "I don't know if they was [sic] able to contact every single person[.]" (ECF No. 50-14, pp. 122-23).[11] If American Screening did not inform customers about "SKU swaps," it necessarily follows that the company did not allow these customers to either (1) wait for the original product to be back in stock (i.e., consent to a shipping delay), or (2) cancel their order and receive a prompt refund.[12]

Defendants also offer their "open orders list" to show that all affected customers were eventually contacted and given the refund-or-consent option. (ECF No. 52-30). Defendants never fully explain what the "open orders list" entails, but the document does not establish compliance with 16 C.F.R. § 435.2(b)(1). First, the log only pertains to 651 orders. *Id.* Mr. Herriage testified that "many thousands" of orders were swapped without the customer's knowledge or consent.

---

[11] Defendants' contention also ignores the fact that Mr. Herriage testified that "many thousands" of orders were swapped without the customer's knowledge or consent. (ECF No. 50-8, p. 115).
[12] Defendants do not assert that all "SKU swapped" orders shipped within seven to 10 days, or even 30 days.

9

(ECF No. 50-8, p. 115). Ms. Lamette testified that American Screening received over 500 calls per day from customers about order statuses throughout 2020. (ECF No. 50, ¶¶ 332-335). Thus, Defendants have not established for the record that the open-orders list accounts for all impacted customers. Second, and more importantly, the log does not show that customers were given the required option under 16 CFR 435.2(b)(1). The issue here is not whether American Screening contacted every affected customer, but whether it contacted those customers *and* gave the refund-or-consent option. In several instances, the log does not address the issue. For example, row 16 pertains to an order placed on March 11, 2020. (ECF No. 52-30, p. 4). The "MemoText" column of Defendants' log states that the product was shipped on May 29, 2020. *Id.* The document says nothing about receiving consent or offering a refund. Even if American Screening offered 10-day shipping at the time, the product still should have shipped by March 25, 2020, excluding weekends. Put another way, the order was at least 65 days late. Similar examples can be found throughout the log. *Id.*

A seller's failure to maintain records relating to the refund-or-consent requirement in subsection (b)(1) creates a rebuttable presumption that the seller failed to comply with its requirement. 16 C.F.R. § 435.2(d). Defendants have not overcome that rebuttable presumption. Even if the presumption did not exist, Defendants have not set forth specific facts establishing a genuine issue of material fact as to whether customers were offered a refund. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. The Court holds that American Screening did not comply with the refund-or-consent requirement in violation of 16 C.F.R. § 435.2(b)(1).

> 3. American Screening did not deem orders cancelled and provide prompt refunds after failing to give the "refund-or-consent" option.

American Screening did not cancel orders without prior request as required by 16 C.F.R. § 435.2(c)(5). (ECF No. 50, ¶ 310). Indeed, based upon the record, it seems the company did not

10

cancel some orders even with prior request. (ECF No. 50, ¶ 292). Moreover, on March 31, 2020, Mr. Kilgarlin told employees via email, "we don't wont [sic] cancelled orders." (ECF No. 50, ¶ 312). From March through December 2020, many customers pursued chargebacks through their credit card companies after not receiving their orders. (ECF No. 50, ¶¶ 317-323). Ms. Lamette testified that the number of chargebacks was "so extreme" that it became her "primary focus." (ECF No. 50, ¶ 322). Here again, Defendants' open-orders log does not create a genuine dispute of material facts. While the log shows that some orders were canceled, these cancelations were in response consumer complaints and it is unclear whether the affected customers received refunds. (ECF No. 52-30).

A seller's failure to maintain records relating to the requirements of paragraphs (c) creates a rebuttable presumption that the seller failed to comply with its requirements. 16 C.F.R. § 435.2(d). Even if the presumption did not exist, Defendants have not set forth specific facts establishing a genuine issue of material fact. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. American Screening did not deem orders cancelled and provide prompt refunds after failing to give the "refund-or-consent" option. The Court holds that American Screening violated 16 C.F.R. § 435.2(c)(5) based upon the record.

### C. Conclusion

While the above is sufficient to show that American Screening violated the Merchandise Rule, the Defendants mercifully concede the point in their Response: "Strict and timely adherence to the letter of [the Merchandise Rule] in this case was not possible during the early delays of the pandemic[.]" (ECF No. 52, p. 14). Defendants appear to seek leniency because of the difficulties presented by COVID-19 pandemic. *Id.* Defendants state that American Screening "did not ignore

11

its customers and did the best it could to follow the spirit of [the Merchandise Rule.]"[13] *Id.* The Court is aware of the complications presented by the pandemic and is not unsympathetic to the challenges it presented to businesses around the country. But unfortunately for American Screening, the law provides no exceptions for sellers that do their "best" during pandemics, particularly when customers paid upfront for PPE necessary to maintain their livelihood and lives.

Defendants have failed to set forth any material facts to support their defenses. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248. Defendants instead rely on allegations and denials and do not substantiate them with sufficient probative evidence. *See Carter*, 956 F.3d at 1059. Viewing the facts in the light most favorable to Defendants, the Court finds there is no genuine issue for trial as to whether American Screening violated the Merchandise Rule. *See Celotex Corp.*, 477 U.S. at 331; *Anderson*, 477 U.S. at 249. The Court will grant FTC's Motion for Summary Judgment on this claim.

**II.     Defendant American Screening Violated the FTC Act.**

   *A.     The FTC Act*

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices." *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1345 (2021) (citing 15 U.S.C. § 45(a)). The FTC has authority to enforce the Act's prohibitions. *Id. "*To establish a violation of Section 5, the

---

[13] Defendants also argue that "reasonably acting" customers could not expect PPE to ship on time. (ECF 52, p. 15). This argument is not well taken. By making this argument, Defendants necessarily suggest that their customers were unreasonable in relying on the company's own representations. But the Merchandise Rule does not account for whether a consumer was reasonable in relying on the seller's representation. The Rule only requires that the representation be "clear and conspicuous." 16 C.F.R. § 435.2(a)(i). While Defendants argue that their 24-48-hour guarantee was not conspicuous, they concede that their later seven-to-10-day representation was "seen at the top of [American Screening's] homepage[.]" (ECF No. 53, p. 33). What is more, "consumer reliance on express claims is presumptively reasonable." *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000) (cleaned up).

FTC must show that Defendants made material representations likely to mislead consumers acting reasonably under the circumstances in a way that is material." *FTC v. Real Wealth, Inc.*, No. 10-0060-CV-W-FJG, 2011 WL 1930401, at *2 (W.D. Mo. May 17, 2011) (citing *FTC v. Cyberspace.com, LLC*, 453 F.3d 1196, 1199 (9th Cir. 2006)). Both express and implied representations are actionable under Section 5. *Id.* (citing *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 604 (9th Cir.1993)).

### B. Discussion

FTC argues that American Screening made the following material and misleading representations: (1) American Screening claimed it had certain PPE in stock and "available to ship;" (2) American Screening claimed it would ship orders within 24-48 hours of processing; and (3) American Screening claimed it would ship items within seven to 10 business days after an order was placed. (ECF No. 39, p. 16). Defendants counter that "customers were aware of extraordinary conditions" during the first part of the pandemic and could not "reasonably expect PPE availability or shipping without interruptions or delays." (ECF No. 52, pp. 14-15).

As a threshold matter, the Court agrees with FTC that American Screening made the alleged representations. Defendants do not argue otherwise. Thus, the Court must decide: (1) Whether the representations were material; and (2) Whether they were likely to mislead consumers acting reasonably under the circumstances. *Real Wealth*, 2011 WL 1930401 at *2.

#### 1. American Screening's representations were material.

A representation is material if it involves information likely to affect a consumer's decision to purchase a particular product or service." *Id.* (citing *Kraft, Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992)). Here, it is undisputed that American Screening made representations about PPE during a global pandemic. Defendants nevertheless argue that the company's representations were not

13

material because consumers could not reasonably expect PPE to be available. (ECF No. 52, pp. 14-15). Defendants state that a reasonable consumer would not expect to find PPE at the beginning of the pandemic any more than they would expect to find toilet paper. *Id.* Defendants' comparison is unhelpful. First, an advertisement for "in stock" toilet paper in April 2020 would almost certainly have affected consumers' purchasing decisions. Defendants offer no case law to show otherwise. Second, as noted above, "consumer reliance on express claims is presumptively reasonable." *Five-Star Auto Club*, 97 F. Supp. 2d at 529. The Court finds that American Screening's representations were material.

2. American Screening's representations were likely to mislead a reasonably-acting consumer.

A representation is likely to mislead a reasonably-acting consumer if it is false or if the advertiser "lacked a reasonable basis—or adequate substantiation—for asserting that the representation was true." *Real Wealth*, 2011 WL 1930401 at *3 (citing *FTC v. Nat'l Urological Group*, 645 F.Supp.2d 1167, 1190 (N.D.Ga.2008)). The records shows that American Screening made impracticable shipping claims for items it did not have in stock. (ECF No. 50, ¶¶ 99, 107, 122, 128-137, 139-140, 146, 147, 164, 192-200). The company received thousands of complaints relating to shipping delays. (ECF No. 50, ¶ 329, 332-341). Most orders took at least six weeks to ship. (ECF No. 50-14, pp. 93-94). This shows that American Screening's shipping claims were false. Further, for the reasons discussed above, the company's shipping claims lacked a reasonable basis. Defendants again argue that no reasonable consumer could "expect PPE availability or shipping without interruption or delays." (ECF No. 52, pp. 14-15). But Defendants offer no authority for their contention and fail to acknowledge that "consumer reliance on express claims is presumptively reasonable." *Five-Star Auto Club*, 97 F. Supp. 2d at 529. The Court finds that

14

American Screening's representations lacked a reasonable basis and were likely to mislead a reasonably-acting consumer.

### C. Conclusion

The Court finds that American Screening's claims lacked a reasonable basis in violation of 15 U.S.C. § 45(a). The Court will grant FTC's Motion for Summary Judgment on this claim.

## III. Individual Liability Under the FTC Act

Individuals may be liable under the FTC Act when: (1) The corporate defendant violated the Act; (2) The individual defendants participated directly in the wrongful acts or practices or had authority to control the corporate defendants; and (3) The individual defendants had some knowledge of the wrongful acts or practices. *FTC v. PayDay Fin. LLC*, 989 F. Supp. 2d 799, 809 (D.S.D. 2013) (cleaned up). The Court has already concluded that American Screening violated the FTC Act. The Court now finds that the Kilgarlin Defendants at least had authority to control American Screening and had some knowledge of the wrongful acts.

Shawn Kilgarlin was the Quality and ISO Manager for American Screening. (ECF No. 50, ¶ 5). The record shows that she also held herself out as the company's Chief Operating Officer. (ECF No. 50, ¶¶ 424-429). When asked about her role as COO during her deposition, Mrs. Kilgarlin invoked her Fifth Amendment right against self-incrimination. (ECF No. 50-11, pp. 18, 22-24, 46-47, 49, 128-129, 133). The record further shows that Mrs. Kilgarlin conducted meetings about inventory, ordered changes to the company's website, approved cancelations and purchases, supervised employees, oversaw customer service, and helped Mr. Kilgarlin run the company when he needed assistance. (ECF No. 50, ¶ 430-442). When asked about these topics at her deposition, Mrs. Kilgarlin again invoked the Fifth Amendment. (ECF No. 50, ¶¶ 65, 126-27, 181, 202, 230, 258, 304-309, 427, 442-44, 464, 467, 475-94, 497, 499-502, 504).

Because this is a civil matter, the Court may draw adverse inferences from Mrs. Kilgarlin's invocation of the Fifth Amendment. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976). But to succeed on its Motion for Summary Judgment, FTC must submit evidence corroborating the adverse inference. *SEC v. Colello*, 139 F.3d 674, 678 (9th Cir.1998). It has done so. "Authority to control a company is evidenced by active involvement with business matters and corporate policy including assumption of officer duties." *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1292 (D. Minn. 1985). As discussed above, the record establishes that Mrs. Kilgarlin had at least some authority over inventory, customer service, and web content—all of which are pertinent here. (ECF No. 50, ¶ 430-442). She even held herself out as the COO. (ECF No. 50, ¶¶ 424-429). Put another way, Mrs. Kilgarlin was actively involved with business matters and corporate policy. No reasonable jury could conclude that Mrs. Kilgarlin was unaware of the company's wrongful practices. The Court will grant FTC's Motion for Summary Judgment as to Mrs. Kilgarlin's individual liability.

Ron Kilgarlin is the founder, CEO, and President of American Screening. (ECF No. 50, ¶ 4). It is undisputed that Mr. Kilgarlin had control over American Screening as CEO and President. (ECF No. 50, ¶¶ 368-383). Mr. Kilgarlin oversees department managers, website content, policies and procedures, expenditures, and at least some marketing efforts. *Id.* Defendants argue that Mr. Kilgarlin should not be individually liable because he disapproved of problematic marketing and advertising. (ECF No. 52, p. 18). But in doing so, Defendants rely on their Supplemental Statement of Facts. (ECF No. 53, p. 27). As noted above, the Court will not consider Defendants' Supplemental Statement of Facts. *See supra* note 1.

There is no doubt that Mr. Kilgarlin exercised control over American Screening. Considering the extent of his control, no reasonable jury could conclude he was unaware of the

16

company's wrongful acts. The Court will grant FTC's Motion for Summary Judgment as to Mr. Kilgarlin's individual liability.

## IV. Monetary and Injunctive Relief

FTC seeks a permanent injunction against Defendants to prevent future violations of the FTC Act. (ECF No. 39, p. 19). FTC also seeks the refund of money to consumers for late or unshipped orders. *Id.*

### A. *Injunctive Relief*

Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides that the FTC, in a "proper case," may seek a permanent injunction to enjoin violations of "any provision of law enforced" by the FTC. "Even if the defendants have altered some of their deceptive practices, injunctive relief is still appropriate when there is a 'cognizable danger of recurrent violation.'" *FTC v. Kitco of Nevada, Inc.*, 612 F. Supp. 1282, 1296 (D. Minn. 1985) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)); *see also FTC v. Sec. Rare Coin & Bullion Corp.*, No. CIV. A. 3-86-1067, 1989 WL 134002, at *19 (D. Minn. Sept. 11, 1989), aff'd, 931 F.2d 1312 (8th Cir. 1991). "[T]he egregious nature of past violations is a factor supporting the need for permanent injunctive relief of a broad nature." *Id.*

Here, FTC seeks to permanently enjoin Defendants from advertising or selling protective goods and services. (ECF No. 39, p. 20). FTC also proposes various compliance-monitoring measures to ensure compliance with the permanent injunction. *Id.* Such relief is appropriate.

The egregious nature of Defendants' conduct warrants an order prohibiting further misrepresentations in the advertising or sale of protective goods and services. *See Kitco*, 612 F.Supp. at 1296. Compliance monitoring is also warranted considering the extent of Defendants' misconduct. Here, Defendants made several misrepresentations regarding shipping and

availability of PPE during a global pandemic. While Defendants have altered some of their practices, injunctive relief is still appropriate as the pandemic is ongoing and there is a "cognizable danger of recurrent violation." *Id.* Such relief will not unduly harm Defendants. *Id.* It will not put them out of business but will simply ensure future compliance with Section 5 of the FTC Act, 15 U.S.C. § 45. *Id.* The Court will grant FTC's Motion for Summary Judgment as to permanent injunctive relief.

### B. *Equitable Monetary Relief*[14]

Section 19 of the FTC Act, 15 U.S.C. 57b, authorizes this Court to grant such relief as the Court finds necessary to redress injury to consumers resulting from a violation of any rule promulgated under the FTC Act respecting unfair or deceptive acts or practices, including the refund of money or property. Here, FTC seeks refunds in the amount of $14,651,185.42. (ECF No. 39, p. 19). Equitable monetary relief is appropriate in this case but a genuine dispute remains as to the appropriate amount of such relief.

For many decades, the FTC was able to win equitable monetary relief from district courts under Section 13(b). *AMG Cap. Mgmt., LLC v. Fed. Trade Comm'n*, 141 S. Ct. 1341, 1347 (2021). The Supreme Court recently clarified that Section 13(b) does not authorize such relief. *AMG Cap. Mgmt.*, 141 S. Ct. at 1347. The Supreme Court noted, however, that nothing in its decision prohibits the FTC from using its authority under Sections 5 and 19 to obtain restitution on behalf of consumers. *Id.* at 1352. Here, FTC seeks to do just that.

In *FTC v. Credit Bureau Center, LLC*, the FTC sued Credit Bureau Center for violations of the FTC Act and the Restore Online Shopper Confident Act ("ROSCA"). *FTC v. Credit Bureau*

---

[14] The parties filed a Joint Stipulation in this matter on March 17, 2022. (ECF No. 56). As part of that stipulation, FTC expressly waived its right to legal damages and clarified that it only seeks equitable monetary relief.

*Ctr., LLC*, No. 17 C 194, 2021 WL 4146884, at *1 (N.D. Ill. Sept. 13, 2021). The district court issued a permanent injunction and ordered CBC to pay over $5 million in equitable monetary relief. *Id.* On appeal, the Seventh Circuit vacated the restitution reward after holding that Section 13(b) does not authorize equitable monetary relief. *Id*. Following the Supreme Court's decision in *AMG*, the FTC filed a motion with the district court to amend the judgment to instead impose the equitable monetary relief under Section 19. *Id.* The district court found that the FTC is entitled to such redress. *Id.* at *3. The district court noted that "if a rule promulgated under Section 18 is violated, the FTC can seek legal and equitable remedies, including restitution, from violators, under [S]ection 19 of the FTC Act." *Id.* at *2. The case is again on appeal before the Seventh Circuit. *Id.*

This Court agrees with the district court in *FTC v. Credit Bureau Ctr.* The Merchandise Rule was promulgated under Section 18 of the FTC Act and pertains to unfair or deceptive acts or practices. 16 C.F.R. § 435.2. Thus, the FTC may seek equitable relief under Section 19 for violations of the Merchandise Rule.

FTC seeks restitution in the amount of $14,651,185.42. (ECF No. 39, p. 19). Defendants argue that FTC's figure is "unreasonable and unnecessary to redress consumer harm in this case because: (1) Harm to customers that ultimately received PPE was nominal since they still received the PPE; (2) Customers who did not receive PPE were given the opportunity to cancel for a refund; and (3) The award amount unfairly classifies all orders shipped after 48 hours as "late". (ECF No. 52, p. 18).

It is unclear from the record in this case how many consumers were affected by Defendants' poor business practices and how much restitution is required as a result. While FTC has offered a seemingly thorough breakdown of its proposed award amount, the supporting analysis is complex

19

and disputed. Defendants assert that FTC's analysis is based on inaccurate data provided by its third-party fulfillment warehouse. (ECF No. 52, p. 14). The Court cannot determine the accuracy and completeness of FTC's proposed equitable monetary relief on the evidence before the Court. The Court is similarly unable to determine what amount of the award is attributable to orders shipped after 48 hours but before 10 business days. Thus, the Court will deny FTC's Motion for Summary Judgment on the issue of equitable monetary relief. Thus, a trial is necessary to determine the appropriate amount of equitable monetary relief in this case.

## CONCLUSION

For the reasons above, the Court will grant FTC's Motion for Summary Judgment in part. Accordingly,

**IT IS HEREBY ORDERED** that the Federal Trade Commission's Motion for Summary Judgment (ECF No. 39) is **GRANTED in part** and **DENIED in part** as set forth herein.

A trial will be conducted in this matter solely to determine the appropriate amount of equitable monetary relief.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of April, 2022.