**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

FEDERAL TRADE COMMISSION

     Plaintiff,

     v.

AMERICAN SCREENING, LLC, *et al.*,

     Defendants.

Case No. 4:20-cv-1021-RLW

### FEDERAL TRADE COMMISSION'S OPPOSITION TO DEFENDANTS' RESPONSE TO FTC'S PROPOSED FINAL ORDER FOR PERMANENT INJUNCTION AND OTHER MONETARY RELIEF

On July 14, 2022, the Court granted the Federal Trade Commission's ("FTC") motion for summary judgment in its entirety against Defendants.  (Mem. and Order dated July 14, 2022 ("July 14 Ruling"), ECF No. 80.)  The Court held, among other things, that the FTC's requested injunctive relief is appropriate and warranted due to Defendants' "egregious" conduct, the proper amount of equitable monetary relief for Defendants' violations is $14,651,185.42, and the FTC should implement a 120-day redress program for consumers to claim refunds.  (*Id*. at 17-23.)  On August 3, 2022, the FTC filed its Proposed Final Order for Permanent Injunction and Other Monetary Relief in accordance with the Court's ruling. ("FTC's Proposed Final Order," ECF No. 81-1.)

Now, Defendants have filed a "response" to the FTC's Proposed Final Order, wrongly claiming the requested injunctive relief goes beyond the Court's rulings, that Defendants should be permitted to pay just a "deposit" on their $14.7 million judgment so that they can dissipate assets in the interim, and quibbling with several aspects of the FTC's proposed redress program. (Def. Mem., ECF No. 84.)  These claims are unsupported and meritless — nothing more than a

1

thinly-veiled attempt to seek reconsideration of the Court's well-reasoned opinion, avoid

payment of the Court-ordered judgment, and otherwise obstruct the efficient administration of

consumer redress.

## I.      The Conduct Prohibitions in FTC's Proposed Final Order Comply with the Court's July 14 Ruling and Similar FTC Cases.

Defendants first object to the provision in the FTC's Proposed Final Order that enjoins

them from advertising or selling Protective Goods and Services, contending that it "imposes

greater restraint and injunctive relief" than what was ordered by the Court. (Def. Mem. at 1-2,

ECF No. 84.)  This is simply false.  In its summary judgment decision, the Court explicitly held

the relief requested by the FTC, including the provision "enjoin[ing] Defendants from

advertising or selling protective goods and services," is "appropriate."  (July 14 Ruling at 18.)

Indeed, in making this ruling, the Court even cites the portion of the FTC's summary judgment

motion that describes the nature and bases for banning Defendants from the marketing and sale

of protective goods and services.  (*Id.* (citing ECF No. 39 at 20).)

Defendants' response wholly ignores the Court's clear language.  Instead, Defendants

raise a litany of arguments regarding how the injunctive relief already granted by the Court will

impact their business.  (Def. Mem. at 2.)  Notably, Defendants did not raise these specific

arguments when the FTC initially proposed this exact injunctive relief in its summary judgment

motion,[1] (*compare* Def. Resp. to Pl. Mot. for Summary Judgment at 19, ECF No. 52 *with* Def.

Mem. at 1-2); nor did Defendants similarly object to the Court's April 6, 2022 summary

judgment decision, which contained the identical ruling that Defendants now purport to

challenge, (*see* Mem. and Order dated Apr. 6, 2022 at 17, ECF No. 72)  Having failed to

identify any "manifest errors of law or fact" or any other legally tenable factor that would

---

[1] (*See* Proposed Order, ECF No. 39-1 at 8.)

warrant reconsideration of the Court's well-reasoned opinion, Defendants cannot now relitigate

this decided issue under the guise of a "response" to the FTC's Proposed Final Order.[2]  *See Berry*

*v. City of St. Louis*, No. 4:21-CV-685, 2021 WL 5823714, at *2 (E.D. Mo., Dec. 8, 2021)

(denying reconsideration where there are no manifest errors of law or fact, mistake, fraud, or

other reason justifying reconsideration of the court's judgment); *see also FTC v. QYK Brands*

*LLC*, No. 20-CV-1431, 2022 WL 2101720, at *1-2 (C.D. Cal. Apr. 22, 2022) (denying

defendants' request that the court reconsider issuance of permanent injunction as defendants

could have, but did not, challenge particular aspects of the injunctive relief when the FTC

initially proposed it in conjunction with summary judgment motion).

## II.    Requiring Full Judgment To Be Held In Escrow is Consistent with Court's July 14 Ruling and Is Not Punitive.

Defendants also argue they should not be required to transfer the full amount of the

Court's judgment prior to a determination of the "scope and amount of claims" for redress.  (Def.

Mem. 5.)  Instead, Defendants propose that they provide only an initial "deposit" to cover redress

administration so that they can use the remaining funds in the meantime to "operate [their]

business" and support "daily life for the individual Defendants."  (*Id*. at 6-7.)  However, that is

**not** the process contemplated by the Court's July 14 Ruling, which expressly holds that the

judgment amount be held in escrow by the FTC throughout the redress process:

> After careful review of the record, the Court agrees with the FTC
> that $14,651,185.42 is the appropriate amount of equitable relief in
> this matter.  The facts support this calculation and are not materially
> disputed.  The Court recognizes, however, that some customers may

---

[2]  The Court's ruling is well-supported by numerous other cases that have upheld similar injunctive relief or bans against defendants.  *See FTC v. QYK Brands LLC*, No. 20-CV-1431, 2022 WL 1090257, at *9-10 (C.D. Cal. Apr. 6, 2022) (granting identical injunctive relief in MITOR and Section 5 action); Final Order for Permanent Injunction and Monetary Judgment ("QYK Brands Final Order") at 9, *QYK Brands LLC*, ECF No. 214 (attached as Exh. A) (entering identical provision enjoining defendants from advertising or selling Protective Goods and Services); *see also FTC v. Lalonde*, 545 Fed. App'x. 825, 841-42 (11th Cir. 2013); *FTC v. DiscountMetalBrokers*, No. 16-CV-2112, 2017 WL 4442998, at *6 (C.D. Cal. Oct. 4, 2017); *FTC v. Real Wealth, Inc.*, No. 10–0060–CV–W–FJG, 2011 WL 1930401, at *4 (W.D. Mo. May 17, 2011).

have been satisfied with their orders, even if delayed.  For that reason, the FTC shall implement a plan that requires customers to make refund requests rather than receiving refunds outright.  *See QYK Brands*, 2022 WL 1090257.  **The FTC shall hold the sum in an escrow account** and Defendants' customers may seek refunds directly from the FTC."

(July 14 Ruling at 23 (emphasis added).)  Nor is it consistent with numerous court orders in FTC cases that repeatedly require payment of the full Court-ordered judgment within days to be held in escrow for the purposes of consumer redress, including *QYK Brands LLC*, the precise case the Court relied on in granting the equitable monetary relief, (July 14 Ruling at 20-21).[3] Section V.B of the FTC's Proposed Final Order follows this practice and the Court's July 14 ruling exactly — requiring Defendants to transfer the judgment amount to the FTC to be held in an escrow account for the purposes of redress.[4]  (ECF No. 81-1 at 12.)

Defendants readily admit if the Court does not order the judgment amount to be held in escrow, they intend to use the funds to "operate their business" and for "daily life for the

---

[3] QYK Brands Final Order (attached as Exh. A) at 18 (requiring defendants to pay full amount of monetary relief within seven days of entry of judgment); *see also e.g., FTC v. Laptop & Desktop Repair, LLC*, No. 1:16-CV-3591, 2017 WL 6994570, at *3 (N.D. Ga. May 19, 2017) (same); *FTC v. HES Merchant Servs. Co., Inc.*, No. 6:12-CV-1618, 2015 WL 892394, at *6 (M.D. Fla. Feb. 11, 2015) (same); *see also FTC v. Federal Check Processing, Inc.*, No. 14-CV-122S, 2016 WL 5940485, at *8 (W.D.N.Y. Oct. 13, 2016) (ordering defendants to pay full judgment within fifteen days of entry of judgment).

[4] Defendants' reliance on *FTC v. Figgie Intern., Inc.* and *FTC v. On Point Glob., LLC*, to support their payment plan proposal is misplaced.  In *Figgie*, the district court entered a judgment that included both a minimum and a maximum redress amount.  The minimum redress figure was equal to Figgie's gross revenues resulting from the sale of the violative product — the amount at issue in this case.  *FTC v. Figgie Int'l, Inc.*, 994 F.2d 595, 601 (9th Cir. 1993).  The maximum redress amount was the full approximation of consumer loss, which actually exceeded Figgie's gross revenues because third-party retailers sold the products at a markup.  *Id*.  The district court in *Figgie* structured the redress program such that, if consumer claims exceeded the company's gross revenues, the defendant would be required to pay *even more money* to complete the redress process.  *Id*. at 607-08.  Notably, however, the court required the company to pay the entirety of the gross revenues, and did not suggest that Figgie was entitled to retain any portion of those revenues during the pendency of the redress process, as Defendants propose in this case.  *See id*. at 601, 607-08 ("Therefore, the court ordered that Figgie pay $7.59 million into a fund which would refund the full purchase price . . . to customers.").  Similarly, in *FTC v. On Point Global, LLC*, the defendants have not been given *carte blanche* access to redress funds.  In fact, the *On Point Global* defendants' assets are *controlled* by a receiver who has been charged with conducting redress and ordered to establish a fund — much like at issue here — consisting of the full amount necessary "to provide full monetary recovery" to consumers.  No. 19-CV-25046, 2021 WL 6497592 (S.D. Fla., Nov. 15, 2021).

4

individual Defendants." (Def. Mem. at 6-7.) Contrary to Defendants' unsupported argument, preventing Defendants from spending judgment funds at whim by requiring those funds to be held in escrow during the pendency of the redress process is not "punitive." To the contrary, under the Court's July 14 Ruling, Defendants have no claim to the money until and unless there are excess funds that are not claimed by consumers or otherwise used for the provision of redress. (July 14 Ruling at 23 (holding that the FTC shall only return any "unclaimed" funds to Defendants, less the FTC's costs in administering redress).) Accordingly, once the Court enters judgment, Defendants do not have a right to those funds — that right belongs to the consumers they injured. *Cf. FTC v. QT, Inc.*, 605 F. Supp. 2d 999, 1007-08 (N.D. Ill. 2009) (holding that once a court finds a violation of the FTC Act, "the funds rightfully belong to the consumers" injured by the violation); *see also FTC v. Think Achievement Corp.*, 312 F.2d 259, 262 (7th Cir. 2002) (after court determines amounts necessary to redress consumer harm, defendant has no right to use frozen funds for personal expenses). Thus, there is nothing punitive about requiring Defendants to turn over the amount of funds already determined by the Court to be the amount of equitable monetary relief owed to consumers.

Moreover, holding the redress funds in escrow is critical to ensuring that the monetary relief ordered by the Court is secured. Otherwise, by Defendants' own admission, the monetary relief the Court has already earmarked for redress would be at risk of dissipation, which would further victimize consumers by depriving them of their rightful refunds.

## III.   **The FTC's Ability to Collect Interest on Unpaid Judgments Is Protected by Statute.**

Defendants also contend that the FTC should not be permitted to collect interest on "any amount deposited into escrow," claiming that such is an "additional monetary loss, a penalty, to American Screening not provided for in the FTC Act or contemplated by the Court's ruling."

5

(Def. Mem. at 8.)  Defendants' argument misstates the FTC's Proposed Final Order and ignores controlling statutory authority that allows the FTC to collect interest on outstanding judgments.

Section V.C.3.b of the FTC's Proposed Final Order provides that ***if Defendants have not*** timely paid the Court's judgment in full before consumers are contacted about their right to a refund, the FTC "may continue to collect the remainder of the Judgment plus interest and distribute those funds until the Judgment is paid in full."  (ECF No. 81-1 at 13-14.)  Thus, this provision only applies to ***outstanding*** judgments, not to "any amount deposited into escrow," as Defendants suggest.  Moreover, the FTC's right to collect interest is protected by statute, 28 U.S.C. § 1961, and a matter of standard practice in collections, *see* QKY Brands Final Order at 20 (attached as Exh. A); *FTC v. Gill*, 71 F. Supp. 2d 1030, 1051 (C.D. Cal. 1999) (ordering that interest shall accrue from the date of any default of payment, pursuant to 28 U.S.C. § 1961).

## IV.   Notice Provisions in FTC's Proposed Final Order Are Necessary to Protect Consumers and Ensure Efficient Redress Administration.

Defendants also object to the redress notice provisions in the FTC's Proposed Final Order.  Under Section V.C.2 of the FTC's Proposed Final Order, if Defendants have paid the judgment in full before the FTC gives notice to consumers of their right to a refund, all affected consumers shall have 120 days from the date of notification to request a refund.  (ECF No. 81-1 at 13.)  However, if Defendants ***have not*** paid the judgment in full on or before the date the FTC notifies consumers of their right to a refund, any notices provided to consumers do not trigger the 120-day notice period while the FTC attempts to collect the outstanding judgment from Defendants.  (*Id*. at 13-14.)  According to Defendants, this latter provision expands the refund claim period beyond the 120 days contemplated by the Court's ruling.  (Def. Mem. at 3-4.) Defendants also object that the FTC's Proposed Final Order does not require the FTC to send out notices within a particular time and does not limit the number of notices to be sent to consumers,

arguing that "otherwise satisfied customers" will be thereby "pressured" to make a refund claim. (*Id*. at 3.)

First, the notice provisions in the FTC's Proposed Final Order are consistent with the Court's summary judgment ruling.  For example, in ruling in the FTC's favor, the Court specifically empowered the FTC to implement the redress program, citing as persuasive authority the district court's decision in *QYK Brands LLC*, which confronted identical issues relating to monetary relief and redress.  (July 14 Ruling at 23.)  In fact, the Court followed *QYK Brands LLC* in ordering a 120-day claims-based redress program.  (*Id*.)  Accordingly, the FTC's Proposed Final Order includes precisely the same notice provisions that have been entered in *QYK Brands, LLC*.[5]

In addition, Defendants' concern that "otherwise satisfied customers" would be "pressured" to make refund claims under the FTC's proposed notice provisions is unfounded.  In reality, these notice provisions are necessary to protect consumers, particularly here where Defendants have given every indication that they will not pay the full judgment and in light of the Court's ruling ordering any "unclaimed" funds be returned to the Defendants after 120 days. (*See* Def. Mem. at 5-7 (requesting to provide a "deposit" in lieu of the full judgment to avoid "financial ruin" and support "daily life" of the individual defendants).)[6]  Otherwise, Defendants can effectively run down the clock on consumers' 120-day deadline for making a refund claim by delaying or refusing payment to the FTC.

For example, if the FTC were required to provide notices to consumers upon entry of the

---

[5] (*Compare* QKY Brands Final Order at 18-20 (attached hereto as Exh. A) *with* FTC's Proposed Final Order at 12-14, ECF No. 81-1.)

[6] Tellingly, much of Defendants' response to the FTC's Proposed Final Order is focused on provisions that are only relevant if Defendants fail to pay the judgment as ordered.  (*See* Def. Mem at 3 (objecting to notice provisions that extend 120-day deadline if Defendants do not pay judgment before consumers are notified of right to refund); *id*. at 8 (claiming that FTC should not be able to collect interest on unpaid judgments).)

judgment, Defendants could provide no money towards the judgment and the 120-day clock for refunds could run before consumers received any compensation at all.  Further, even if the FTC were not required to provide notices to consumers within a particular time period, but, as Defendants also desire, there are no protections in place to stay the 120-day deadline, Defendants could pay only a small "deposit" on the full judgment leaving the FTC with a Hobson's choice: either (1) notify consumers of their right to a refund and begin distribution of that deposit with pro-rata based partial refunds, and forgo the ability to collect the remainder of the Court-ordered judgment from Defendants after 120 days (thereby, incentivizing Defendants to obstruct collection efforts by the FTC for over 120 days), or (2) delay notifications to consumers while pursuing collections against Defendants and risk consumers' contact information and recollection of Defendants' activities growing stale (encouraging Defendants to delay collections indefinitely).  However, under the FTC's proposed provisions (i.e., those entered by the district court in *QYK Brands*), no such gamesmanship is possible.  The FTC can determine based on the amount of money collected by Defendants (and the amount needed to administer redress), when to notify consumers of their right to a refund.  Moreover, in the event that Defendants only partially pay the judgment, the FTC can still notify consumers of their right to a refund, and begin that distribution while pursuing collections against Defendants.  Then, if the FTC collects additional funds from Defendants towards the outstanding judgment over time, consumers would not be time-barred due to Defendants' failure to timely meet their payment obligations, ensuring a fair and efficient redress program.[7]

---

[7] Defendants also object that the FTC's Proposed Final Order allows the FTC a reasonable time after consumers have exhausted their 120-day refund claim period to determine the amount of any unclaimed funds and costs for administering the redress fund before returning any such amounts to Defendants.  (Def. Mem. at 3-4.)  Defendants fail to identify any substantive concern with this provision, claiming only that this allows the FTC additional time beyond the 120 days contemplated in the Court's summary judgment ruling.  Again, this provision is consistent with the approach taken in *QYK Brands LLC*.  (QKY Brands Final Order at 19-20).  In addition, it allows

Defendants' insistence that the FTC be limited to some unspecified amount of consumer notices should also be disregarded.  The FTC determines how many notices should be sent to consumers based on a variety of factors, including the accuracy of the consumer information provided by Defendants.  (*See* ECF No. 81-1 at 14-15 (requiring Defendants to provide "sufficient customer information" to enable efficient redress).)  It is common, for example, for the FTC to send supplemental notices to consumers whose addresses and contact information have changed since their purchases with defendants.  Limiting the number of consumer notices would only constrain the ability of the FTC to reach consumers and properly apprise them of their rights to refunds.

**V.      Allowing Defendants' Involvement in Redress Administration Runs Contrary to Court's Ruling and Would Make Redress More Expensive, Lengthier, and Subject to Needless Judicial Intervention.**

Defendants further claim they should be permitted to contest the FTC's administration of redress funds because otherwise they have no recourse to "challeng[e] a punitive administration of the Court's order."  (Def. Mem. at 7.)  However, the Court's July 14 Ruling specifically envisioned that the FTC, and not Defendants, would implement the redress program.  (July 14 Ruling at 23 (holding that "the FTC shall implement" the redress plan).)  Indeed, as the federal agency charged by law with protecting and representing consumers' interest, the FTC is best positioned to execute a successful redress program.  Defendants also do not identify — nor can they — how the FTC could administer redress to consumers in a way that would be punitive to them.  Certainly, Defendants' view appears to be that fully compensating consumers injured by their law violations is inherently "punitive" towards Defendants — a concept that cannot be

---

consumers the full 120 days to make their refunds claims without limiting that time period by requiring the FTC to tally its costs prematurely.

found in — and indeed is contrary to — the law.  *See FTC v. Figgie Intern., Inc.*, 994 F.2d 595, 607 (9th Cir. 1993) ("[E]quity requires the wrongdoer to restore the victim to the status quo.").

Under the FTC's Proposed Final Order, the FTC is required to hold all judgment funds in escrow for the purposes of administering consumer redress and Defendants "have no right to challenge" the actions the agency makes with regard to redress administration.  (ECF No. 81-1 at 13.)  This provision is identical to several FTC orders entered in analogous cases, including *QYK Brands*.  *See* QYK Brands Final Order at 19.[8]  There are strong public policy reasons for this standing provision.  The FTC has subject matter expertise in the areas of redress administration and distribution.  In 2021 alone, the FTC returned over $400 million in refunds to consumers, using less than 2% of the judgment amounts it obtained for administrative costs.[9]  To ensure such success, the FTC makes numerous data-driven and consumer-focused decisions to maximize recovery and effectuate a fair redress program.  These decisions impact every component of the redress process from the content, method, and frequency of consumer communications to the best methods for payment to consumers.  Defendants, on the other hand, have no incentive to ensure fair and efficient redress administration — let alone the relevant expertise.  Rather, Defendants are financially incentivized to reduce and limit the amount of consumer claims through delay or other means, particularly in light of the 120-day refund claim period.  Allowing Defendants' involvement in each part of this process would only serve to complicate decision-making and make redress administration in this case more expensive, time-consuming, and ripe for needless judicial intervention should Defendants disagree with the FTC's data-driven,

---

[8] *See e.g.*, *FTC v. Roca Labs, Inc.*, No. 8:15-CV-2231, 2019 WL 1187412, at *9 (M.D. Fla. Jan. 4, 2019) (entering provision that defendants "have no right to challenge any actions the FTC or its representatives may take" regarding the administration of the monetary judgment); *FTC v. HES Merch. Servs. Co., Inc.*, No. 6:12-CV-1618, 2015 WL 892394, at *6 (M.D. Fla. Feb. 11, 2015).

[9] *See* Federal Trade Commission, Data on Refunds to Consumers, available at https://www.ftc.gov/enforcement/recent-ftc-cases-resulting-refunds/data-refunds-consumers.

consumer-focused decision-making.[10]

## VI.    **Enjoining Defendants From Profiting From Customer Information is Standard Injunctive Relief in FTC Cases.**

Defendants further object to standard FTC order language prohibiting them from benefiting or otherwise using consumer data obtained as part of their violative conduct. Section VII.B. of the FTC's Proposed Final Order enjoins Defendants from "[d]isclosing, using, or benefiting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the sale of Protective Goods and Services." (ECF No. 81-1 at 14-15.) Defendants object that this provision "interferes" with their business because it "den[ies] Defendants the opportunity to attempt to regain good will of its customers" and violates their Fifth Amendment rights to "liberty of contract and property." (Def. Mem. at 8-9.) However, this provision is standard fencing-in relief that has been repeatedly upheld as appropriate.

Section VII.B. prohibits Defendants from continuing to profit off their violative conduct by selling, using, or otherwise benefiting from customer information they obtained through their deception. Courts have repeatedly upheld provisions identical to Section VII.B. as standard "fencing-in relief" that is appropriate to "close all roads to the prohibited goal, so that orders may not be bypassed with impunity." *See FTC v. 1st Guar. Morg. Corp.*, No. 09-CV-61840, 2011

---

[10] In addition, Defendants provide no support, because there is none, for the notion that if they are not allowed to review, and presumably pre-approve, copies of consumer notices or demand reporting from the FTC on redress administration, the FTC would have "immunity from violating the law," and permission to "mishandle" escrow funds. (Def. Mem. at 7.) Under the FTC's Proposed Final Order, the FTC is bound by several requirements to ensure that it follows the Court's July 14 Ruling, including that the FTC must use all money paid under the order for the purposes of consumer redress and any attendant expenses (ECF No. 81-1 at 12); that such money must be held in an escrow account to be used for equitable relief (*id*.); and that the FTC must return any unclaimed funds and costs to the Defendants (*id*. at 13-14).

WL 1233207, at *21 (S.D. Fla. Mar. 30, 2011) (quoting *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982)); *see also* QKY Brands Final Order at 21 (attached hereto as Exh. A); *FTC v. Genius Techs., LLC*, No. 18-CV-03654, 2019 WL 12872865, at *10 (N.D. Cal. Feb. 20, 2019) (noting that violators of the FTC Act must expect "some fencing-in" to include "prohibiting defendants from disclosing or benefiting from previously obtained customer information"), report and recommendation adopted, 2019 WL 12872782 (N.D. Cal. Mar. 14, 2019); *FTC v. Springtech 77376 LLC*, No. 12-CV-04631, 2013 WL 5955395, at *4 (N.D. Cal. Oct. 28, 2013). The fact that Defendants desire to "regain [the] good will" of consumers they deceived — in other words, advertise to and profit from them — does not change the fact that this injunctive relief is necessary and appropriate.

Moreover, Defendants' claim that such standard fencing-in relief amounts to a Fifth Amendment violation is unsupported. Defendants' sole legal support for this constitutional argument is *Adair v. United States*, a 1908 Supreme Court case that struck down a federal statute that criminalized terminating an employee for labor union membership. 208 U.S. 277 (1908). The disparate facts of that case alone make it inapposite, and Defendants cite no authority for the notion that injunctive relief entered after motion practice has been fully heard and adjudicated, following two years of litigation on the merits, violates their Fifth Amendment rights.[11] To the contrary, it is well-settled that violators of the FTC Act, like Defendants here, must expect some "fencing in," including limitations on their ability to use data obtained as part of their violative practices. *See 1st Guar. Morg. Corp.*, 2011 WL 1233207, at *21 (enjoining defendants from use of customer information is appropriate "fencing in").

---

[11] Defendants could have, but did not, raise any Fifth Amendment challenge to this injunctive relief in conjunction with the FTC's summary judgment filings. (*Compare* Def. Resp. to Pl. Mot. for Summary Judgment at 19, ECF No. 52 *with* Def. Mem. at 1-2.)

12

Nevertheless, the FTC has determined that the customer information provision in the FTC's Proposed Final Order could be further narrowed and still appropriately "fence-in" Defendants from future violations.  Accordingly, the FTC has modified this provision in the attached proposed Final Order to limit the customer information at issue to only such data obtained from January 2020 until entry of judgment.[12]

## CONCLUSION

For the foregoing reasons, the FTC respectfully requests that this Court enter the attached Proposed Final Order for Permanent Injunction and Other Monetary Relief (attached as Exhibit B).

Dated:  August 15, 2022                          Respectfully Submitted,

                                                 /s/ Omolara Bewaji Joseney
                                                 OMOLARA BEWAJI JOSENEY, 4937132 (NY)
                                                 DILLON J. LAPPE, 82876 (MI)
                                                 ANNE COLLESANO, 1029665 (DC)
                                                 FEDERAL TRADE COMMISSION
                                                 600 Pennsylvania Avenue NW, CC-9528
                                                 Washington, DC 20580
                                                 (202) 326-2599; ojoseney@ftc.gov (Joseney)
                                                 (202) 326-2833; dlappe@ftc.gov (Lappe)
                                                 (202) 326-2485; acollesano@ftc.gov (Collesano)
                                                 *Counsel for Plaintiff*

---

[12] The revised provision would enjoin defendants from "[d]isclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained **since January 2020** in connection with the sale of Protective Goods and Services."  (*See* Proposed Final Order (attached hereto as Exh. B.) (emphasis added).)  The substitution of the emphasized language to narrow the scope of protected customer information from such information "obtained prior to entry of this Order" to such information obtained "since January 2020" is the only change the FTC has made to its proposed Final Order.