**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:20-CV-1021 RLW |
| | ) | |
| AMERICAN SCREENING, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on the Federal Trade Commission's ("FTC") Proposed Final Order for Permanent Injunction and Other Monetary Relief ("Proposed Order"). (ECF No. 81-1). The Court will adopt the FTC's Proposed Order for the reasons below.

**BACKGROUND**

On April 6, 2022, the Court granted partial summary judgment in favor of the FTC, finding that Defendant American Screening, LLC violated the Mail, Internet, or Telephone Order Merchandise Rule ("MITOR" or "Rule"), 16 C.F.R. § 435.2(a)(1), and the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a). (ECF No. 72). The Court also granted summary judgment in favor of the FTC as to Defendants Ron Kilgarlin, Jr. and Shawn Kilgarlin's personal liability for those violations. *Id.* at 15-17. The Court concluded, however, that a trial was necessary to determine the appropriate amount of equitable monetary relief in this matter. *Id. at* 20.

Upon further review of the record and applicable law, the Court vacated its Memorandum and Order granting partial summary judgment on July 14, 2022, and issued a new Memorandum and Order granting summary judgment on all counts. (ECF No. 80). The Court ordered the FTC to file a revised proposed judgment consistent with the Court's Order, which the FTC did on

August 3, 2022. (ECF No. 80, 81). The Court then permitted the parties to brief their respective

positions regarding the proposed order. (ECF Nos. 82-87).

## DISCUSSION

Defendants take issue with six provisions of the Proposed Order. (ECF No. 84). The Court

will address each in turn. Before doing so, the Court notes that to the extent Defendants'

Memorandum in Opposition could be liberally construed as a motion for reconsideration, it must

be denied. Motions for reconsideration are commonly brought under Rule 59(e) (motion to alter

or amend the judgment) or Rule 60(b) (relief from judgment for mistake or other reason). Fed. R.

Civ. P. 59(e), 60(b).

Under Rule 59(e), a court may alter or amend a judgment upon a motion filed no later than

28 days after entry of the judgment. Fed. R. Civ. P. 59(e). Rule 59(e) gives the Court power to

rectify its own mistakes in the period immediately following the entry of judgment. *White v. N.H.*

*Dep't of Emp't Sec.*, 455 U.S. 445, 450 (1982). Rule 59(e) motions are limited, however, to

correcting "manifest errors of law or fact or to present newly discovered evidence." *U.S. v. Metro.*

*St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoted cases omitted). Such motions

cannot be used to introduce new evidence, tender new legal theories, or raise arguments that could

have been presented prior to judgment. District courts have broad discretion in determining

whether to grant a Rule 59(e) motion. *Id.*

Under Rule 60(b), the Court may relieve a party or its legal representative from a final

judgment, order, or proceeding for: (1) mistake, inadvertence, surprise, or excusable neglect; (2)

newly discovered evidence that, with reasonable diligence, could not have been discovered in time

to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or

extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5)

the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

There are no grounds for granting relief under either Rule 59(e) or 60(b). Defendants point to no manifest errors of law or fact. They do not argue mistake, fraud, or other reason justifying reconsideration of the Court's judgment. There are no exceptional circumstances here that justify extraordinary relief. The Court will not reconsider merit-based arguments that were previously considered and dismissed. Thus, the Court declines to grant relief under either Rule 59(e) or 60(b).

## I.    Advertisement and sale of protective goods and services (Defendants' Part 1)

Defendants argue that the FTC's Proposed Order "imposes greater restraint and injunctive relief than called for by the Court in its Memorandum and Order." (ECF No. 84 at 1). They contend that the permanent restraint on advertising and selling protective goods and services exceeds the relief contemplated by the Court. (ECF No. 80). The FTC counters that Defendants' interpretation ignores the "clear language" of the Court's Order of July 14, 2022 ("Order"). (ECF No. 87 at 2).

Section I of the Proposed Order states:

> IT IS ORDERED that Defendants are permanently restrained and enjoined from the advertising, marketing, promoting, or offering for sale, or assisting others in the advertising, marketing, promoting, or offering for sale, of any Protective Goods and Services.

(ECF No. 81-1 at 8). The Proposed Order defines "Protective Goods and Services" as

> any good or service designed, intended, or represented to detect, treat, prevent, mitigate, or cure COVID-19 or any other infection or disease, including, but not limited to, Personal Protective Equipment, hand sanitizer, and thermometers.

*Id.* at 6.

As the FTC points out in its Memorandum in Support (ECF No. 87), the Court's Order clearly contemplates a permanent injunction against the sale and advertisement of protective goods and services:

> Here, the FTC seeks to permanently enjoin Defendants from advertising or selling protective goods and services. (ECF No. 39, p. 20). The FTC also proposes various compliance monitoring measures to ensure compliance with the permanent injunction. *Id. Such relief is appropriate*.

(ECF No. 80 at 18) (emphasis added). Contrary to Defendants' argument, the proposed provision does not exceed the level of relief contemplated by the Court's July 14, 2022 Order and the Court sees no reason to alter the proposed language.

## II.   Judgment deposit and notice requirements (Defendants' Parts 2 and 3)

Defendants argue that the provision requiring upfront payment of the full judgment amount—here, $14,651,185.42—would result "in an undue burden on Defendants, not the least would be permanent loss of liquidated assets, close of the business, financial ruin, and the deprivation of significant funds" beyond the amount truly needed to redress consumer injury. (ECF No. 84 at 5). The FTC counters that upfront payment is consistent with the terms of the Court's Order. (ECF No. 87 at. 3).

Defendants also argue that the FTC's proposed refund program does not comply with the Court's Order because it "fails to limit the period for claiming a refund to 120 days from the date of notice." (ECF No. 84 at 3). The FTC again counters that the notice provisions are consistent with the Court's Order. (ECF No. 87 at 7).

Section V of the Proposed Order states, in relevant part:

> A. Judgment in the amount of Fourteen Million, Six Hundred Fifty-One Thousand, One Hundred Eighty-Five Dollars and Forty-Two Cents ($14,651,185.42) is entered in favor of the Commission

4

against Defendants, jointly and severally, as monetary relief pursuant to Section 19 of the FTC Act.

B. Defendants are ordered to turn over the sum of Fourteen Million, Six Hundred Fifty-One Thousand, One Hundred Eighty-Five Dollars and Forty-Two Cents ($14,651,185.42) to the Commission within seven (7) days of entry of this Order.

. . .

C. The FTC shall use the Redress Fund to redress consumers who purchased goods from Defendants, and for the administration of that redress. The FTC shall have sole discretion on how to administer the redress program, provided however,

. . .

2. If Defendants have paid the Judgment in full on or before the date the FTC gives notice to consumers of their right to a refund:

a. All consumers shall have 120 days from the date of notification to request a refund after receiving notice ("120-Day Notice Period").

. . .

c. After the conclusion of the 120-Day Notice Period, the FTC shall have a reasonable time to determine the amount of unclaimed funds and costs of administering the Redress Fund ("Post-Notice Administration Period").

d. The FTC shall return to Defendants any amount of money in the Redress Fund (less costs of administering the Redress Fund) that remains at the conclusion of the Post-Notice Administration Period.

3. If Defendants have not paid the Judgment in full on or before the date the FTC gives notice to consumers of their right to a refund:

a. The FTC, at any time, may give notice to consumers of their right to a refund, and may make partial distributions if the FTC determines in its sole discretion that doing so is practical. Any notice given under this provision shall not trigger the 120-Day Notice Period.

. . .

(ECF No. 81-1 at 12-14).

5

The issue is whether these provisions adhere to the parameters of the Court's Order, which states:

> After careful review of the record, the Court agrees with the FTC that $14,651,185.42 is the appropriate amount of equitable relief in this matter . . . . [T]he FTC shall implement a plan that requires customers to make refund requests rather than receiving refunds outright. The FTC shall hold the sum in an escrow account and Defendants' customers may seek refunds directly from the FTC. The FTC shall return all unclaimed funds to Defendants no later than 120 days after consumers are notified of the refund program, less the FTC's costs in administering the program.

(ECF No. 80 at 23) (internal citations omitted).

Defendants assert that pre-payment of the full judgment "will result in an undue burden on Defendants, not the least would be permanent loss of liquidated assets, close of the business, financial ruin, and the deprivation of significant funds beyond the amount needed to redress the injury[.]" (ECF No. 84 at 5). Defendants argue that the Proposed Order improperly allows the FTC to provide an unlimited number of notices to consumers while permitting consumers to make claims for an indefinite period. *Id.* at 3. The FTC responds that the notice provisions are necessary to prevent gamesmanship by the Defendants and apply only if the Defendants fail to pay the judgment in full before the FTC gives notice to consumers of their right to a refund. (ECF No. 87 at 7-9).

The FTC's proposed language adequately reflects the spirit of the Court's July 14, 2022 Order. If Defendants pay the full judgment to the FTC on or before the date the FTC gives notice to consumers of their right to a refund, consumers will have 120 days from the date of notification to claim a refund. (ECF No. 81-1 at 12-14). If a consumer does not submit a claim within 120 days of the date of notification, that consumer is not entitled to a refund. *Id.* After the expiration of the 120-day period, the FTC will determine the amount of unclaimed funds and costs of administering

the refund program and return any remaining sum to the Defendants. *Id.* Only if Defendants do not pay the judgment before the FTC gives notice to consumers of their right to a refund is the FTC permitted to administer the Redress Fund beyond the 120-day period commencing on the date of notification. *Id.*

This approach makes sense. If the Court required strict adherence to a 120-day limit under all circumstances, Defendants would be incentivized to pay only a fraction of the judgment knowing that the FTC must terminate the Redress Fund 120 days after sending notice to consumers. If the Court adopted Defendants' approach, Defendants would be able to avoid substantial financial lability for their misconduct. That cannot be allowed. The Redress Fund must be administered in favor of the consumer, not those who made the Fund necessary in the first place.

Notably, even if Defendants do not pay the entire judgment before the FTC gives notice to consumers, Defendants are not subject to "disgorgement" by the FTC. *See AMG Cap. Mgmt., LLC v. F.T.C.,* 141 S. Ct. 1341, 1344 (2021) ("The question presented is whether [15 U.S.C. § 53(b)] authorizes the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement. We conclude that it does not."); *see also F.T.C. v. Elegant Sols., Inc.*, No. 20-55766, 2022 WL 2072735, at *3 (9th Cir. June 9, 2022) ("Section 19 does not, however, authorize 'disgorgement' that 'exceed[s] redress to consumers.' *Figgie*, 994 F.2d at 607. The district court must therefore modify its injunction to remove the sentence providing that '[a]ny money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.'"). Once Defendants satisfy all refund requests, they are entitled to the remaining money in the Redress Fund less the FTC's costs of administering the Fund. (ECF No. 81-1 at 13, 14). The language of the Proposed Order does nothing more than provide redress to consumers impacted by Defendants' misrepresentations.

### III.   Defendants' role in administering the redress program (Defendants' Part 4)

Defendants next dispute a provision in Section V.B. of the Proposed Order that prohibits them from challenging the FTC's actions in administering the redress program. (ECF No. 84 at 7). The proposed provision states that "Defendants have no right to challenge any actions the Commission or its representatives may take with regard to the conduct or administration of redress pursuant to this Section." (ECF No. 81-1 at 13). The FTC argues that such a prohibition is appropriate because the FTC "is best positioned to execute a successful redress program" and Defendants are "financially incentivized to reduce and limit the amount of consumer claims[.]" (ECF No. 87 at 9, 10).

The Court agrees that the FTC is better positioned to administer a successful redress program. Defendants offer no authority for their position that the provision would violate their due process rights or result in punitive administration by the FTC. Indeed, other courts have issued similar or identical provisions in the past. *See, e.g., F.T.C. v. Benefytt Techs., Inc.*, No. 8:22-cv-01794-TPB-JSS, 2022 WL 4003850, at *11 (M.D. Fla. Aug. 11, 2022); *F.T.C. v. Elegant Sols., Inc.*, No. SACV 19-1333 JVS (KESx), 2020 WL 4914654, at *7 (C.D. Cal. July 17, 2020), *aff'd in part, rev'd in part on different grounds and remanded*, No. 20-55766, 2022 WL 2072735 (9th Cir. June 9, 2022); *F.T.C. v. Vyera Pharms., LLC*, No. 20cv00706 (DLC), 2022 WL 1081563, at *5 (S.D.N.Y. Feb. 4, 2022), *objections overruled sub nom. F.T.C. v. Shkreli*, No. 20cv00706 (DLC), 2022 WL 336973 (S.D.N.Y. Feb. 4, 2022). This precedent aside, nothing in the Proposed Order relieves the FTC from complying with applicable laws and regulations. The Court will adopt the FTC's proposed restriction on Defendants' right to challenge the FTC's administration of the Redress Program.

## IV.   The FTC's right to collect interest (Defendants' Part 5)

Defendants also take issue with the proposed provision that permits the FTC to retain the interest earned on funds held in escrow. (ECF No. 84 at 8). Defendants argue that the provision constitutes a penalty against Defendants that is not contemplated by the Court's Order. *Id.* The FTC counters that Defendants misconstrue the provision and that the FTC's right to collect interest is protected by statute. (ECF No. 87 at 5-6).

Section V.C. of the Proposed Order states, in relevant part:

> 3. If Defendants have not paid the Judgment in full on or before the date the FTC gives notice to consumers of their right to a refund:
> . . .
>
> b. The Commission may continue to collect the remainder of the Judgment plus interest and distribute funds until the Judgment is paid in full.

(ECF No. 81-1 at 13-14).

Defendants offer no authority for their assertion that "permitting the FTC to keep interest earned on the escrow deposit is punitive[.]" (ECF No. 84 at 8). Indeed, the FTC's right to collect interest is protected by 28 U.S.C. § 1961, which expressly permits the collection of interest on any monetary judgment in a civil case recovered in a district court. 28 U.S.C. § 1961(a). What is more, the provision applies only if Defendants fail to pay the entire judgment within seven days. And notably, under the terms of the Proposed Order, the FTC will use the interest collected to satisfy consumer claims. That is, the interest collected will be used to refund consumers that were affected by Defendants' wrongdoing, which is the entire purpose of the redress program. The FTC is entitled to collect interest under these circumstances.

## V.    Defendants' use of customer information (Defendants' Part 6)

Finally, Defendants assert that the proposed provision enjoining them from using any customer information obtained in connection with the sale of protective goods and services exceeds the letter and spirit of the Court's Order and would not protect consumers from future violations of the FTC Act. (ECF No. 84 at 8). Defendants also argue that such a limitation would violate their Fifth Amendment rights to "liberty of contract and property." *Id.* The FTC argues that such a prohibition is standard and repeatedly upheld in these types of cases. (ECF No. 87 at 11).

The language at issue states that Defendants, and those acting on their behalf, are permanently restrained and enjoined from directly or indirectly:

> B. Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account . . . that any Defendant obtained prior to entry of this Order in connection with the sale of Protective Goods and Services[.]

(ECF No. 81-1 at 14-15).

"The FTC is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past. Having been caught violating the [FTC] Act, respondents must expect some fencing in." *F.T.C. v. Genius Techs. LLC*, No. 18-CV-03654-LB, 2019 WL 12872865, at *10 (N.D. Cal. Feb. 20, 2019), *report and recommendation adopted*, No. 18-CV-03654-JST, 2019 WL 12872782 (N.D. Cal. Mar. 14, 2019). Similar provisions have repeatedly been upheld and the Court finds that such a prohibition is warranted here. *See, e.g., F.T.C. v. 1st Guar. Morg. Corp.*, No. 09-CV-61840, 2011 WL 1233207, at *21 (S.D. Fla. Mar. 30, 2011); *Litton Indus., Inc. v. FTC*, 676 F.2d 364, 370 (9th Cir. 1982); *Genius Techs.*, 2019 WL 12872865, at *10; *F.T.C. v. Springtech 77376 LLC*, No. 12-CV-04631, 2013 WL 5955395, at *4 (N.D. Cal. Oct. 28,

2013). The Court will adopt the proposed language regarding Defendants' use of customer information.

## CONCLUSION

The Court will adopt the FTC's Proposed Order. A final judgment and order will follow.


_____
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

Dated this 31st day of January, 2023.

11