# United States Court of Appeals
### *For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 27, 2024

Cary Allen Hilburn
HILBURN & HILBURN
Suite B
220 Carroll Street
Shreveport, LA  71105

      RE:  23-1616  FTC v. American Screening, LLC, et al

Dear Counsel:

      The court today issued an opinion in this case. Judgment in accordance with the opinion was also entered today.

      Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 45 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 45 day period for filing permitted by FRAP 40 may be denied as untimely.

                                                   Maureen W. Gornik
                                                   Acting Clerk of Court

NDG

Enclosure(s)

cc:     Imad Dean Abyad
       Michael Daniel Bergman
       Clerk, U.S. District Court, Eastern District of Missouri
       Anne Collesano
       Bradley Dax Grossman
       Richard McNelley
       Daniel S. Peters
       John David Shepherd Jr.
       Honorable Ronnie L. White

      District Court/Agency Case Number(s):   4:20-cv-01021-RLW

# United States Court of Appeals
*For The Eighth Circuit*

Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
**St. Louis, Missouri 63102**

**Maureen W. Gornik**
*Acting Clerk of Court*

VOICE (314) 244-2400
FAX (314) 244-2780
www.ca8.uscourts.gov

June 27, 2024

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE: 23-1616 FTC v. American Screening, LLC, et al

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant and appeared on the brief was Cary Allen Hilburn, of Shreveport, LA. The following attorney also appeared on the appellant brief;  John David Shepherd, Jr., of Shreveport, LA.

  Counsel who presented argument on behalf of the appellee was Imad Dean Abyad, of Washington, DC. The following attorney appeared on the appellee brief;  Michael Daniel Bergman, of Washington, DC.

  The judge who heard the case in the district court was Honorable Ronnie L. White.

  If you have any questions concerning this case, please call this office.

               Maureen W. Gornik
               Acting Clerk of Court

NDG

Enclosure(s)

cc: MO Lawyers Weekly

   District Court/Agency Case Number(s): 4:20-cv-01021-RLW

# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-1616
_____

Federal Trade Commission

*Plaintiff - Appellee*

v.

American Screening, LLC, a Louisiana limited liability company; Ron Kilgarlin, Jr., individually and as an officer of American Screening, LLC; Shawn Kilgarlin, individually and as officer of American Screening, LLC

*Defendants - Appellants*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: April 9, 2024
Filed: June 27, 2024
_____

Before BENTON, ARNOLD, and STRAS, Circuit Judges.
_____

ARNOLD, Circuit Judge.

At the outset of the COVID-19 pandemic, American Screening, LLC, promised buyers that it would ship personal protective equipment, or PPE, more quickly than it actually did. The Federal Trade Commission sued American Screening, alleging that its shipping policies and practices had violated the FTC Act and the Mail,

Internet, or Telephone Order Merchandise Rule—a rule known as MITOR. The district court[1] granted the FTC summary judgment and ordered American Screening to return almost $14.7 million to consumers and permanently enjoined it from advertising or selling PPE. American Screening challenges the district court's ordered remedies on appeal, but we affirm.

American Screening is a Louisiana company that sold much of its products online. Before the pandemic, it mostly sold medical tests and equipment, though it also sold some PPE, including masks, gloves, disinfectant, and hand sanitizer. In March 2020, American Screening advertised PPE on Google and through emails to consumers, and its volume of PPE sales increased significantly. When customers purchased PPE from American Screening's website, their accounts were charged as soon as they submitted their orders. The website contained a shipping policy that provided that "[o]rders received before 2:00 pm CST will be processed that day and in some cases orders called in by 4:00 pm CST can be processed that day. All shipping occurs 24-48 hours after processing, pending product availability." Several customers referred to this shipping policy in their communications with American Screening.

At some point, most likely in mid-to-late March 2020 though the exact date is uncertain, American Screening began to advise on its website that "[p]roducts may ship 7-10 business days after order has been placed." It told the district court that this "'7-10 day' language can be seen at the top of every [American Screening] webpage." But it appears that American Screening did not delete the earlier assertion on its website that "[a]ll shipping occurs 24–48 hours after processing," meaning that consumers received mixed messages about when products would ship. An FTC investigator submitted a declaration that contained screenshots of American

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

-2-

Screening's website from June 18, 2020, and on the very page that contained American Screening's 24–48-hour shipping policy, the top of the page asserted that "[p]roducts may ship 7–10 days after order has been placed." The parties do not point to any place in the record showing that American Screening ever removed any reference to its 24–48-hour shipping policy.

American Screening also represented on its website that many products were in stock and available to ship, but consumers discovered that they weren't. As the district court noted, the parties dispute how frequently this happened, but American Screening appears to admit that it received complaints from many consumers about products being listed "in stock" when the consumer ordered them, only to find out after payment that the product was not in stock but had been backordered. In addition, American Screening's website on occasion noted that some items were out of stock, and for some of those items, American Screening provided estimated shipping dates. So, for example, on one page of American Screening's website purportedly captured on June 18, 2020, a specific kind of hand sanitizer gel is listed as out of stock but could be expected to ship between June 22 to June 27.

American Screening struggled to fill the influx of PPE orders. Its manager of customer service testified that, despite the company's promises about early shipment, in practice it took about six weeks for PPE to be shipped after the customer had purchased it. American Screening also filled some orders for unavailable products with similar, available items that the buyer didn't order. And for some orders American Screening simply never shipped anything. Many customers complained. The customer service manager estimated that, throughout 2020, American Screening got about 1500 emails and 500 calls daily regarding customer orders. She explained that "all the customers sa[id] pretty much the same thing: Where is my order?"

American Screening did not call all its affected customers to determine whether they wanted a refund or would consent to shipping delays in lieu of a refund, nor did

-3-

it cancel orders absent a customer request. But even when a customer requested a refund American Screening often declined to provide it. One employee testified that American Screening had denied most refund requests and that, if customers requested a refund because they hadn't received the products they ordered, American Screening would ship them the product instead. As founder, CEO, and president Ron Kilgarlin noted in an email to employees, "we don't won't [sic] cancelled orders." Many customers attempted to get their money back by pursuing chargebacks with credit card companies, and the manager of customer service said that there were so many chargebacks to investigate that it became her "primary focus."

The FTC brought suit against American Screening in August 2020, alleging that it had committed deceptive acts or practices by making "false, misleading, or unsubstantiated" representations about product availability and shipping times in violation of the FTC Act. *See* 15 U.S.C. § 45(a)(1). It also alleged three violations of MITOR, which imposes certain relevant obligations on sellers. First, MITOR requires that, when a seller solicits online purchases, it must have "a reasonable basis to expect that it will be able to ship any ordered merchandise" within the time clearly and conspicuously stated in the solicitation or, if no such time is stated, within thirty days after receiving an order. *See* 16 C.F.R. § 435.2(a)(1). Second, when a seller fails to ship merchandise within these time requirements, it must offer the buyer, without a demand, "an option either to consent to a delay in shipping or to cancel the buyer's order and receive a prompt refund." *See id.* § 435.2(b)(1). Third, a seller must cancel an order and promptly refund money to a buyer when it fails to give the buyer the option to consent to a shipping delay and hasn't shipped the item within the applicable time requirements. *See id.* § 435.2(c)(5).

In awarding the FTC summary judgment, the district court held that American Screening had violated these three provisions of MITOR as well as the FTC Act itself. American Screening does not appear to challenge these determinations on appeal. Over American Screening's objection, the district court also ordered that it

-4-

refund $14,651,185.42 to customers, which was the revenue American Screening generated from PPE sales in 2020 that were shipped more than 48 hours after the customer's purchase, less refunds that it had already issued. We review the court's award for an abuse of discretion. *See F.T.C. v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1316 (8th Cir. 1991).

American Screening takes aim at many aspects of this award. We begin with its contention that the court should not have simply considered whether consumers were injured in some kind of aggregate but should have instead considered whether each individual consumer had relied on American Screening's shipping representations and had sustained an injury as a result. We rejected a similar contention in *Rare Coin*, where the FTC alleged that a company had violated the FTC Act when it "fraudulently marketed rare coins to consumers for investment purposes." *See id.* at 1313. In doing so, we directly addressed the company's contention that the FTC had to show that each individual consumer had relied on false or misleading statements before he could be reimbursed. We explained that the FTC merely had to show that the misrepresentations or omissions were of a kind that reasonable and prudent purchasers rely on, that they were widely disseminated, and that injured consumers actually purchased the defendant's products. *See id.* at 1316. Adopting the company's position, we said, would frustrate the public purposes of an FTC action, as "[t]his is not a private fraud action, but a government action brought to deter unfair and deceptive trade practices and obtain restitution on behalf of a large class of defrauded investors." *See id.*

There can be no serious contention that the FTC has not made the showing here that *Rare Coin* requires. The record shows that American Screening's PPE sales exploded at the beginning of the pandemic largely because of its representations to desperate consumers that it had PPE in stock and ready to ship, and American Screening doesn't seriously contend otherwise. To the extent it argues that reasonable consumers wouldn't have relied on its express promises as the pandemic set in, we

-5-

disagree. *See F.T.C. v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 528 (S.D.N.Y. 2000). Suppliers presumably count on consumers to believe and act on promises of prompt shipping.

It is true that the FTC in *Rare Coin* obtained equitable monetary relief under a different legal provision, 15 U.S.C. § 53(b), from the one it invokes here, *see id.* § 57b(b), and that courts may no longer award equitable monetary relief under § 53(b). *See AMG Capital Mgmt., LLC v. FTC*, 593 U.S. 67, 70 (2021). Though *AMG Capital* renders part of our opinion in *Rare Coin* no longer good law, we draw from the part of that opinion that *AMG Capital* did not call into question, namely, the part that shines light on how courts might shape equitable monetary relief (assuming the relevant law makes it available) in cases, like this one, where the FTC is seeking a remedy on behalf of a large class of consumers because of a company's widespread deceptive trade practices. We note, moreover, that other courts have applied *Rare Coin*'s principles in § 57b(b) cases. *See, e.g.*, *F.T.C. v. Figgie Int'l, Inc.*, 994 F.2d 595, 605–06 (9th Cir. 1993) (per curiam).

Whatever other courts may have done, we need to ensure that *Rare Coin* is compatible with the text of § 57b(b) before using it to guide our decision. Section 57b(b) states that, in cases where the FTC brings suit in federal court against someone for violating one of its rules (such as MITOR), the court has "jurisdiction to grant such relief as the court finds necessary to redress injury to consumers," including "the refund of money or return of property." But the court cannot "authorize the imposition of any exemplary or punitive damages."

American Screening maintains that the district court's equitable monetary relief went beyond what was necessary to redress consumers and so amounts to an award of exemplary or punitive damages, contrary to § 57b(b). We disagree. The court took pains to ensure that the relief it ordered wasn't punitive. It began with American Screening's net revenue from its 2020 PPE sales that were shipped over 48 hours after

-6-

purchase (and thus presumably late). But it didn't stop there. It recognized that some consumers might have been satisfied with their orders, even if they arrived late. So it ordered the FTC to implement a plan that required customers to request a refund before receiving one. It also ordered the FTC to hold the money in an escrow account and, no later than 120 days after consumers are notified of the refund program, directed the FTC to return the leftover money to American Screening, less the costs of administering the program. We don't see this as a punitive or unnecessary award, but one tailored to ensure that dissatisfied consumers are made whole while also ensuring that American Screening does not have to pay unharmed customers as punishment. We note that other courts have approved similar plans in cases involving the FTC and companies that violated MITOR at the outset of the pandemic. *See FTC v. QYK Brands LLC*, 2024 WL1526741, at *2 (9th Cir. Apr. 9, 2024) (unpublished); *FTC v. Zaappaaz, LLC*, 2024 WL 1237047, at *10 (S.D. Tex. Mar. 21, 2024).

Relatedly, American Screening faults the court for pegging the monetary award to its net revenue without taking into account that the products consumers received have value, which, it says, leads to a windfall for consumers. Courts have routinely rejected this contention. To illustrate why, consider an analogy that the Ninth Circuit raised in *Figgie*. That court explained that there's nothing inherently dishonest about selling rhinestones, and indeed they have some value. But it is dishonest to represent that a rhinestone is a diamond and then charge a diamond price for it. A customer who bought a rhinestone on the belief that it was actually a diamond should have the opportunity to get all his money back, and a court should not limit the customer's recovery to the difference in value between a diamond and a rhinestone because the seller's misrepresentation tainted the purchasing decision. If the seller had told the truth, the buyer might not have bought the rhinestone in the first place. *See Figgie*, 994 F.2d at 604, 606. In other words, the consumer has lost the chance to avoid the purchase entirely, *see Zaappaaz*, 2024 WL 1237047, at *9, and is stuck with one that he did not intend to make.

Calculating the award starting with net revenues as a base isn't about punishing the wrongdoer, as American Screening maintains. It's about restoring the buyer to the position he was in before the sale and before he was duped into purchasing products. We've not found a single court that has held to the contrary for pre-purchase misrepresentations. We also see no reason why misrepresentations about the qualities of a product should be treated differently from misrepresentations about the time within which a consumer could expect to receive the product. Had American Screening's customers known that they would not receive their PPE for over six weeks, they likely would have made their purchases elsewhere. And if some customers did not mind the delay, the court's remedial plan is designed to prevent those customers from recovering a windfall. *See QYK Brands*, 2024 WL 1526741, at *3.

But, American Screening says, consumers should at least be required to return their products before receiving a refund. We doubt that is even feasible for PPE products that were ordered four years ago, and doing so would arguably reward American Screening for shipping items late rather than complying with MITOR's refund-or-consent obligation. In any case, we could hardly fault the district court since American Screening did not ask it to order consumers to return their purchases. In the circumstances, the court did not abuse its discretion in not ordering that consumers return the products before receiving a refund.

Finally, American Screening takes issue with the court's presumption that all PPE orders that shipped more than 48 hours after purchase were late. But this is just a repackaging of the argument that the FTC had to show that each individual consumer was injured, which we've already addressed. Further, we don't think the court abused its discretion in presuming that items shipped 48 hours after purchase were late since that representation appears to have been made when most, if not all, purchases were made. Even if American Screening made other shipping representations at the same time, we do not believe it was an abuse of discretion for

-8-

the court not to reward American Screening for its mixed messages. As the district court explained, American Screening should bear the risk of uncertainty that its deception (and lack of recordkeeping) created, as "[t]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946). And again, to the extent that consumers relied on, say, the "7–10 business days" representation instead of the "24–48 hour" representation (and American Screening actually shipped the order within 7–10 business days), the structure of the court's award is meant to weed out satisfied customers from recovery. In sum, we affirm the court's grant of equitable monetary relief.

We turn next to American Screening's challenge to the district court's decree permanently enjoining it from advertising or selling PPE. The district court held that "[t]he egregious nature" of American Screening's conduct warranted the injunction, as it "made several misrepresentations regarding shipping and availability of PPE during a global pandemic." It also found that the injunction would not unduly harm American Screening. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *SD Voice v. Noem*, 60 F.4th 1071, 1077 (8th Cir. 2023).

The FTC sought the injunction under 15 U.S.C. § 53(b), which says that when the FTC has reason to believe that a company "is violating, or is about to violate, any provision of law" that the FTC enforces, it may obtain a temporary restraining order or preliminary injunction from a federal court while the FTC pursues an administrative claim against the company. That provision goes on to include a proviso that says, "[*p*]*rovided further*, That in proper cases the [FTC] may seek, and after proper proof, the court may issue, a permanent injunction." The relationship between the proviso and the rest of § 53(b) is less than crystaline. *See Republic of Iraq v. Beaty*, 556 U.S. 848, 858 (2009); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 154–55 (2012). It is unclear whether

the FTC must show that American Screening "is violating, or is about to violate" the FTC Act again before a court enters a permanent injunction. But the parties do not discuss the point, and American Screening does not contend that the district court misunderstood § 53(b). So we leave it for another day.

American Screening maintains that the injunction is broader than necessary to target the harm that the FTC complains of. It says that the court should have simply enjoined it from violating the FTC Act or MITOR again. Though the scope of the district court's injunction is wide, we do not detect an abuse of discretion here.

First, we agree with the court that the egregiousness of American Screening's conduct weighs in favor of the injunction. *See F.T.C. v. Kitco of Nev., Inc.*, 612 F. Supp. 1282, 1296 (D. Minn. 1985). American Screening capitalized on the public's fear during the early stages of the pandemic, attracting customers with promises of fast shipping that it had no reason to believe it could perform and then pocketing the money despite literally thousands of complaints and refund requests. The egregiousness of American Screening's conduct suggests that it wouldn't hesitate to take advantage of another national emergency calling for PPE should the conditions arise, or that it wouldn't perform deceptive acts to move PPE off its shelves.

We also agree with the district court that the injunction's effect on American Screening is more modest than its breadth might suggest. PPE sales were not a significant part of American Screening's business until the pandemic erupted and it misled consumers into believing it would deliver PPE quickly. In addition, PPE is now widely available in stores across the country and online, so there's no indication that customers would flock to American Screening for PPE as they were misled to do during the pandemic. We also do not fault the court for declining to enjoin only new law violations; the law already prohibited American Screening from doing so, yet it was not deterred. Courts have issued similar injunctions to other companies in similar circumstances, *see, e.g.*, *QYK Brands*, 2024 WL 1526741, at *4; *Zaappaaz*, 2024 WL

-10-

1237047, at *8, meaning that the injunction here isn't an aberration but a relatively common means of securing future compliance with the FTC Act. We therefore reject American Screening's challenge to the scope of the permanent injunction barring it from advertising or selling PPE.

Two loose ends remain. First, in addition to finding American Screening liable for the violations, the court found Ron Kilgarlin and his wife, Shawn Kilgarlin, individually liable. Shawn contends that the court should not have found her individually liable because she did not participate directly in the wrongful acts or have authority to control the company. She notes that the record doesn't show that she was an owner, president, or CEO of American Screening, that she had authority to hire or fire employees, or that she had authority to sign contracts or even checks on the company's behalf.

The FTC Act allows courts to order equitable relief from "any person . . . [who] violates any rule . . . respecting unfair or deceptive acts or practices." 15 U.S.C. § 57b(a)(1). Under the statute's plain language, a person can be individually liable for personally violating the FTC Act, much like in § 1983 cases when an official can be individually liable if he was "personally involved" in a violation. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995). The record is clear that Shawn personally participated in violating MITOR. During the pandemic, she told employees to deny refund requests, to stop cancelling backorders, and to take pre-orders despite the company's lack of product. She was, in other words, "personally involved" in American Screening's misconduct. *See id.* The district court did not err in imposing individual liability on Shawn.

The second loose end is American Screening's contention that the district court should have considered a supplemental statement of facts that it filed in response to the FTC's motion for summary judgment. The district court disregarded the statement

-11-

on the ground that it didn't comply with Local Rule 4.01(E), which governs summary-judgment procedure, and because the facts contained in it were irrelevant.

We agree that the facts contained in American Screening's supplemental statement are irrelevant, and so any error in disregarding them was harmless. American Screening says that the facts are relevant because they describe "the virtual impossibility of technical compliance with MITOR and the reasons American Screening was unable to abide by its usual shipping policies under the extraordinary times" that the pandemic presented. For example, American Screening mentions that it faced challenges because of difficulties with a third-party warehouse, government directives, and an illness that Ron had suffered. But as a sister circuit recently explained, MITOR "has built into its structure an accommodation for unforeseen disruptions" like the ones companies experienced during the pandemic. *See QYK Brands*, 2024 WL1526741, at *2. MITOR contemplates that sellers will not always be able to ship products when expected, and in that circumstance, it directs sellers to contact the buyer and obtain consent for the delay or offer to cancel the order for a refund. *See id.*; *see also* 16 C.F.R. § 435.2(b)(1). What MITOR does not allow sellers to do is what American Screening did here, regardless of the reasons why it shipped items late. We therefore do not believe that the facts contained in the supplemental statement would have moved the needle had the court not disregarded them.

Affirmed.

STRAS, Circuit Judge, concurring in part and dissenting in part.

Statutes matter, even in equity. The one here required the district court to make specific findings before ordering full refunds and banning the company from selling personal protective equipment again. I would vacate and remand.

-12-

I.

First, the refunds. The Federal Trade Commission requested $15 million to reimburse customers for orders that did not ship within 48 hours. The district court thought that the refunds were "necessary" because the defendants "induced the sale of [personal protective equipment] with misleading statements." In its view, they had to bear any "risk of uncertainty regarding the exact amount of damages."

The statute requires more. Far from creating a default rule in favor of broad relief unless the wrongdoer establishes otherwise, the statute calls upon the district court to "find[]" that any monetary "relief" it orders is "*necessary* to redress injury to consumers." 15 U.S.C. § 57b(b) (emphasis added); *see id.* (ruling out "exemplary or punitive damages"); *see also Webster's Third New International Dictionary* 1511 (2002) (defining "necessary" as "that cannot be done without: that must be done or had: absolutely required"). Regardless of whether the district court chooses a "refund of money . . . [,] payment of damages," or some other form of relief, it must tailor the award and make "find[ings]" to support it. 15 U.S.C. § 57b(b); *cf. FTC v. Verity Int'l, Ltd.*, 443 F.3d 48, 69 (2d Cir. 2006) (requiring the award to "reasonably approximate[]" consumer harm); *FTC v. Trudeau*, 579 F.3d 754, 771 (7th Cir. 2009) (giving district courts leeway to choose a metric for "consumer losses" if they "make sufficient factual *findings* to substantiate [the] award amount" (emphasis added)).

The most obvious problem is that the district court never accounted for the value of the personal protective equipment that American Screening's customers received. At least a third of the company's revenue came from orders shipped within 30 days. Given that the pandemic lasted years, it is hardly clear that what was in those orders would have been worthless after a few weeks. Yet to justify full refunds for all orders that took more than 48 hours to ship, the district court must have

-13-

reached exactly that conclusion. It just never said so. *See Verity Int'l*, 443 F.3d at 69 (requiring the district court to "explain[] its basis" for the award).

In contractual terms, the district court did more than just make customers "whole." *BLB Aviation S.C., LLC v. Jet Linx Aviation, LLC*, 808 F.3d 389, 394 (8th Cir. 2015) (quoting *Ed Miller & Sons, Inc. v. Earl*, 502 N.W.2d 444, 450 (Neb. 1993)). It cobbled together two contractual remedies: "rescission of the fraudulent transaction" and compensatory damages. 27 Williston on Contracts § 69:47; *see Bartenwerfer v. Buckley*, 598 U.S. 69, 82 (2023). That is, customers received the best of both worlds: they could keep the personal protective equipment they received *and* get a full refund. *See Feeney v. AT & E, Inc.*, 472 F.3d 560, 564 (8th Cir. 2006) ("[T]he party seeking rescission" can get their money back, but "must return to the other party the . . . consideration received."). One does not have to be an expert on contract law to know they ended up better off than when they started. It was, in other words, a windfall, which did more than "necessary to redress [their] injur[ies]."[2] 15 U.S.C. § 57b(b); *see BLB*, 808 F.3d at 394 (requiring "a reasonably accurate measure of [contract] damages [that] do[es] not result in a windfall" (quoting *Ed Miller & Sons*, 502 N.W.2d at 451)).

To support its full-refund remedy, the district court relied on one of our prior decisions, *FTC v. Sec. Rare Coin & Bullion Corp.*, 931 F.2d 1312, 1315–16 (8th Cir. 1991), rather than make the necessary findings. In *Rare Coin*, we affirmed a full-refund equitable award, but only because the coins the company sold had lost all their value. *See id.* at 1316. Here, by contrast, the personal protective equipment almost

---

[2]To be sure, the district court reduced the windfall by requiring customers to request a refund and the Federal Trade Commission to return what remained to American Screening. But at best this procedure reduced the number of customers who collected a windfall, not the amount of the windfall each received. *See* 15 U.S.C. § 57b(b).

-14-

certainly continued to have some value to the customers who purchased it, even if it came late. And, in any event, the Supreme Court has since concluded that the statute we applied in *Rare Coin* does not authorize refunds. *See AMG Cap. Mgmt., LLC v. FTC*, 593 U.S. 67, 78 (2021).

*AMG* should have been a flashing warning sign. The statute we once thought authorized a full refund does not. But rather than examining the issue anew, the court just imports the *Rare Coin* framework. And it does so even though this statute, unlike the previous one, requires the remedy to be "*necessary* to redress [customer] injur[ies]." *Compare* 15 U.S.C. § 57b(b) (emphasis added), *with* 15 U.S.C. § 53(b) (stating that, "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction"). Just like a near-total refund did not qualify as a "permanent injunction" in *AMG*, 593 U.S. at 75 (quoting 15 U.S.C. § 53(b)), neither is giving customers a windfall "necessary to redress [their] injuries," 15 U.S.C. § 57b(b). Even if, as the Federal Trade Commission argues, it is hard to measure the exact harm they suffered. *But see Verity Int'l*, 443 F.3d at 69 (discussing the agency's "investigatory power . . . to estimate [damages] with some degree of precision").

II.

There are similar problems with the injunction permanently banning the defendants from selling personal protective equipment. This time, all the district court said was that there was a "cognizable danger of recurrent violation" because the defendants had acted "egregious[ly]" and the pandemic was "ongoing."

Once again, however, the relevant statute requires more. When "any person, partnership, or corporation *is violating*, or *is about to violate*," the law, the Federal Trade Commission can "bring suit in a district court . . . to enjoin any such act or

-15-

practice." 15 U.S.C. § 53(b)(1) (emphasis added). For permanent injunctions like the one here, a proviso applies: "*Provided further*, [t]hat in proper cases the [agency] may seek, and after proper proof, the court may issue, a permanent injunction." *Id.* § 53(b).

The statute does not directly say what a "proper case[]" and "proper proof" are, but reading the statute in its entirety unlocks the meaning of both. "[P]roper proof" is a reference back to the requirement that the Federal Trade Commission establish that the "person, partnership, or corporation" against whom it seeks a permanent injunction is "violating" or "about to violate" the law. *Id.* § 53(b)(1). A "proper case" is one in which the court has found, based on that evidence, that a violation is ongoing or "about to" happen and a permanent injunction "would be in the interest of the public." *Id.*; *see United States v. Morrow*, 266 U.S. 531, 535 (1925) (explaining that a proviso "refers . . . to the provision to which it is attached"); *cf. Starbucks Corp. v. McKinney*, — S. Ct. —, 2024 WL 2964141, at *4–5 (2024) (noting that, although the phrase "just and proper" requires a district court to employ "the normal equitable rules" for injunctive relief, Congress can "increase the burden for obtaining an injunction"). The statute's focus, after all, "is prospective, not retrospective," meaning that past misconduct alone is not enough.[3] *AMG Cap. Mgmt.*, 593 U.S. at 76; *see United States v. Or. State Med. Soc'y*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall *future* violations. . . . [I]t adds nothing that the calendar of years gone by might have been filled with transgressions." (emphasis added)).

Yet that is all we have here. By the time the Federal Trade Commission requested a permanent injunction, there was *no* evidence that American Screening

---

[3]Nor would it be enough under ordinary equitable principles. *See United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953) (requiring "some cognizable danger of recurrent violation").

-16-

was still violating the statute or on the verge of doing so again. Nor was there evidence that the extraordinary circumstances surrounding the early days of the pandemic, which placed unprecedented strains on the country's supply chains, would recur. Plus, as the district court itself pointed out, American Screening had already "altered some of [its illegal] practices" by implementing a policy notifying customers of delayed shipments and offering them an option to cancel. Given these changed circumstances, the district court never explained why there was *still* a "cognizable danger of recurrent violation." *See FTC v. Shire ViroPharma, Inc.*, 917 F.3d 147, 160 (3d Cir. 2019); *W.T. Grant*, 345 U.S. at 635 ("The failure to point to circumstances compelling further relief against the [defendants] speaks for itself.").

The court tries to supply what is missing by connecting "the egregiousness of American Screening's conduct" with a predisposition toward "tak[ing] advantage of another national emergency calling for [personal protective equipment]." *Ante* at 10. The problem with that line of reasoning is that the statute requires a finding that a defendant "is *about* to violate" the law. 15 U.S.C. § 53(b)(1) (emphasis added); *Webster's Third New International Dictionary*, *supra*, at 5 (defining "about" as "near or not far from in time"). Unless the next emergency was "near," there was no reason to grant a permanent injunction, even if the district court had reason to believe that American Screening would exploit it. *See Minn. Ass'n of Health Care Facilities, Inc. v. Minn. Dep't of Pub. Welfare*, 602 F.2d 150, 154 (8th Cir. 1979) ("[T]he speculative nature of the threatened harm support[s] the denial of injunctive relief.").

Besides, the relevant statutes supply a remedy in this scenario. In addition to providing for immediate monetary relief, *see* 15 U.S.C. § 57b(b), they allow the Federal Trade Commission to return to court for a temporary restraining order or a preliminary injunction upon discovery that a previous offender "is about to violate" the law again, *see id.* § 53(b). It is still a mystery, at least to me, why these statutorily authorized routes would not have done the job. *See Califano v. Yamasaki*, 442 U.S.

-17-

682, 702 (1979) (explaining "that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs").

### III.

Accordingly, I would vacate the remedies imposed by the district court and remand for further proceedings.

_____